Danny M. MOYER, Appellant,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.

No. 90–1324.

United States Court of Veterans Appeals.

Submitted Nov. 14, 1991.

Decided April 8, 1992.

Ray R. Whitlow, Kennewick, Wash., was on the brief, for appellant.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and Rosalind E. Masciola, Washington, D.C., were on the brief, for appellee.

Before NEBEKER, Chief Judge, and MANKIN and IVERS, Associate Judges.

MANKIN, Associate Judge:

Appellant, Danny M. Moyer, brings an appeal from a July 11, 1990, decision of the Board of Veterans' Appeals (BVA or Board) which denied additional entitlement for residuals of a gunshot wound to the right arm, currently assigned a 70% disability rating, and denied a total disability rating for compensation purposes based on individual unemployability. The Court has jurisdiction of the case pursuant to 38 U.S.C. § 7252(a) (formerly § 4052(a)). The Court denies the Secretary of Veterans Affairs' (Secretary) motion for summary affirmance, but grants his motion to remand on grounds other than those asserted.

## I. FACTUAL BACKGROUND

Danny M. Moyer served on active duty in the United States Navy from January 4, 1966, to November 30, 1968. R. at 10. Moyer's entrance medical examination revealed "no problems." R. at 12. On October 18, 1967, while serving in Vietnam, Moyer received a gunshot wound to his right arm. R. at 29, 32, 34, 39–47. At the time of debridement, the radial nerve was intact, but contused, the median nerve was 80% severed, and the ulnar nerve was completely severed. R. at 29, 32, 43, 47. Since Moyer is right-handed, the disability to this arm and hand was significant. There were severe dysesthesia (impairment of sensitivity to touch) and paraesthesia (sensation of pricking or tingling) due to the nerve damage. R. at 35, 44. On September 12, 1968, a medical board found the veteran to be medically "unfit for duty". R. at 46. On December 19, 1968, the Veterans' Administration (now Department of Veterans Affairs) (VA) rated Moyer's right arm injury as service-connected and 100% disabling for the residuals of the gunshot wound, with a fractured humerus, neuropathy of ulnar and median nerves. He was awarded this convalescent rating and entitlement to special monthly compensation under 38 U.S.C. § 1114 (formerly § 314) on account of loss of use of one hand. The compensation was to date back to December 1, 1968. Unemployability was not an issue at this time. R. at 47–48.

On August 26, 1969, Moyer underwent a special orthopedic physical examination after complaining that he had lost all use of his right arm and hand due to nerve damage. R. at 49–55. On September 18, 1969, he was awarded a 50% disability rating from October 1, 1969, for radial, ulnar and medial nerve palsy with incomplete paralysis. Moyer was also awarded a 40% disability rating from October 1, 1969, for muscle damage, muscle group V, severe, with bone damage, right upper arm. He was given a convalescent rating of 100% from December 1, 1968, to September 30, 1969, and special monthly compensation on account of the loss of use of one hand from December 1, 1968. R. at 57. The combined rating was 100% from December 1, 1968, and 70% from October 1, 1969. R. at 56.

On May 6, 1970, a rating decision increased his combined disability rating to 100% because Moyer had been hospitalized. R. at 58. On April 7, 1970, Moyer was admitted to the hospital for various operations to increase the usefulness of his right arm and hand. He was finally discharged on September 15, 1970. R. at 59–60. After being discharged from the hospital, a December 16, 1970, rating decision reduced his combined disability rating to 70% from November 1, 1970. Unemployability was not an issue at this time. R. at 61–62.

In 1971, Moyer submitted an Income–Net Worth and Employment Statement in support of his claim for an increase in compensation based upon his unemployability. His last day of work was August 18, 1971. R. at 63–64. On September 9, 1971, a rating board assigned him a 100% disability rating based upon unemployability from August 19, 1971. R. at 65.

On November 14, 1979, his total disability rating was reduced to a schedular combined rating of 70% when Moyer failed to return the employment questionnaire. It was subsequently increased after the VA received the questionnaire. R. at 66. A rating decision of February 20, 1981, confirmed the 1979 decision stating that "unemployability grant [is] deemed appropriate." R. at 67.

Apparently between the 1981 rating decision and a July 17, 1983 hearing, a rating reduction to 70% occurred, although documentation of the reduction is missing from the record. A formal hearing was held on July 17, 1983, before the Compensation and Pension Rating Board in the VA Regional Office (VARO) in Seattle. R. at 68–75. Apparently while Moyer was receiving compensation based upon his 100% disability rating for individual unemployability, he worked part-time for six months as a subcontractor counselor for a youth employment program. R. at 68–69. He worked under that contract from December 1, 1981, through May 31, 1982, and made a total of $7,120. R. at 77. He also volunteered at the Benton County Republican Headquarters for about ten hours a week. R. at 70–71. These two incidents appear to be the basis for the rating reduction. Moyer stated that his condition had not improved since 1968. R. at 69, 74. Moyer had tried to work in all kinds of situations, but "none of them worked out." R. at 71–72. He testified that he took a heavy dose of pain pills and did biofeedback to reduce the pain, but he could not concentrate for very long due to the pain. This, he claimed, made him unemployable. R. at 72–74. The rating decision of July 28, 1983, continued the reduction of his total disability status based on unemployability to a combined rating of 70%, apparently because a VA form was not returned, and continued his Special Monthly Compensation entitlement under 38 U.S.C. § 1114(k) for the loss of use of one hand. R. at 76.

The VA requested that Moyer take another physical examination on November 30, 1983, to support his claim of unemployability. The examination revealed that there was "50% loss of tissue around the scar muscle dystrophy" and "90% non productive R[ight] hand due to strength & flexion & extension limitation. Also pain exhibited [with] stress." R. at 87. Moyer went for a consultation with a neurologist on January 26, 1984, and participated in a social survey on December 28, 1983. R. at 88–92. The neurologist, Dr. Toomas Eisler, used the American Medical Association Guidelines for evaluation of Moyer's permanent impairment and concluded that "his impairment would be for amputation of an arm between deltoid insertion and elbow joint, upper extremity, 95% and whole man 57%." R. at 90. The social worker noted that Moyer had "developed many talents to offset the severe disability to his right arm" and had "demonstrated his ability to perform competently in responsible positions." R. at 92. The rating decision of March 6, 1984, assessed Moyer at a 70% combined disability rating for the residuals of the gunshot wound to the right arm, 50% for neuropathy, and 40% for the shortening of the humerus. Unemployability was denied, apparently because of the positive findings of the neurologist and social worker. R. at 94–95.

Moyer filed a Notice of Disagreement (NOD) on March 28, 1984, requesting reinstatement of his 100% disability rating based upon unemployability. R. at 98. Moyer then filed his Notice of Appeal (NOA) to the BVA on April 13, 1984. R. at 108. On March 15, 1985, the BVA concluded that the evidence did not demonstrate that the veteran was precluded from performing gainful employment due to his service-connected disability and denied individual unemployability. R. at 113–17. In its decision, the BVA did not discuss the VARO's reduction in Moyer's disability rating and did not apply 38 C.F.R. § 3.343 or § 3.344 (1991).

On August 5, 1988, Moyer once again applied for an increase in compensation based on his individual unemployability by submitting "new and material" evidence to reopen his claim. R. at 118–41. The only employment he had was from March 1985 to May 1985 and in March 1986, but he was politically active as a volunteer in the Republican party. A request for a physical examination was made on September 22, 1988, which was conducted on November 4, 1988. R. at 142–46. A psychological evaluation of November 4, 1988, revealed: "Although the veteran's physical condition and pain may definitely impair Mr. Moyer from establishing and maintaining an effective wholesome relationship and industrial production, the psychosocial history did not

appear to be a detriment in being able to maintain effective and favorable relationships with people or to be productive in a chosen work setting." R. at 147–48. The rating decision of November 28, 1988, denied him individual unemployability, and the combined disability rating remained at 70% (right arm gunshot wound at 50% and right arm neuropathy at 40%). R. at 149–50.

On December 13, 1988, Moyer filed his NOD with the Seattle VARO. R. at 152. Confirmed rating decisions were issued on January 12, 1989, and on January 25, 1989, based on the findings of the psychological evaluation. R. at 153, 158. An appeal requesting a personal hearing was filed on February 27, 1989. R. at 159.

A formal hearing was held on June 7, 1989. R. at 167–230. Appellant stated that the Veterans of Foreign Wars (VFW) representative told him to "lie" at the 1985 hearing, and that the 1985 BVA decision reducing his unemployability status was completely wrong. R. at 170–76, 186. After Moyer worked for only six months as a recruiter for the National Guard in 1981, the VARO reduced the 100% rating based on individual unemployability in 1983. R. at 192–201. He testified that he attempted to work at a few other sales jobs, but could not keep up with the work because of the pain. R. at 204. He also volunteered in politics. R. at 204–06. He could not continue in college or vocational school, because he was taking narcotic painkillers. R. at 208–09. He never received any industrial counseling, but claimed that he was unemployable as a result of the pain, physical limitations of his arm, and limitations caused by the medications. R. at 211. The last time he worked was for six weeks in 1986 on a political campaign. He claimed to have been fired from his other jobs as a result of the pain, missed work, and the prescription drugs. R. at 220–22. He had also been diagnosed with melanoma. R. at 222–27.

On July 10, 1989, additional information was submitted. R. at 231–33. On August 7, 1989, the hearing officer found that Moyer was not entitled to an increase above the 70% already assigned, nor to a total rating for compensation based on individual unemployability, and confirmed the January 25, 1989, rating decision. R. at 235–36. An updated medical report was sent to the VARO on September 11, 1989. R. at 237–40. The veteran's treating physician, Dr. Sen, concluded that Moyer is "probably not able to continue to function in gainful employment under ordinary circumstances, unless special arrangements can be made." R. at 238. The doctor felt that Moyer "should be able to function as a self employed person or in a place where his work is sedentary and he can do his work in a flexible manner." R. at 240. On July 11, 1990, the BVA issued a decision that: 1) denied any excess above the previous 70% rating for the residuals of the service-connected gunshot wound of the right arm, 2) awarded a separate 30% rating (moderately severe) for the residuals of the gunshot wound with muscle damage to group V and a fracture of the humerus, and 3) denied a total rating based upon appellant's individual unemployability due to the service-connected disability. *Danny M. Moyer*, BVA 90–22873, at 7 (July 11, 1990). From this BVA decision, Moyer appeals to this Court.

## II. ANALYSIS

Appellant contends that the BVA erred by denying entitlement to an increased rating for the residuals of a gunshot wound of the right arm, currently rated as 70% disabling. Appellant further argues that the BVA decision was clearly erroneous, arbitrary, capricious, an abuse of discretion, and not in accordance with the law by concluding that appellant was capable of substantial gainful employment for purposes of a total disability rating based on individual unemployability. The Secretary filed a motion for summary affirmance as to the first issue and a motion to remand on the second issue.

### A.

While the issue of entitlement to an increased schedular disability rating was not adequately briefed by appellant, clear error in the application of the law is obvi-

ous from the record. The Board purported to evaluate and award appellant the maximum 70% allowable under 38 C.F.R. § 4.124a, Diagnostic Code (DC) 8512 (1990). Apparently, the BVA and the VARO failed to notice that 38 C.F.R. § 4.124a had been amended before the BVA decision, and that the VA inadvertently omitted Diagnostic Code 8512 in the 1990 Code of Federal Regulations. *See* 54 Fed.Reg. 49754 (1989), 55 Fed.Reg. 154 (1990); *cf.* 38 C.F.R. at 408 (1989) and 38 C.F.R. at 411 (1990) (where DC 8512 is omitted, even though it is still listed in Appendix B, at 426 and Appendix C, at 432). Under 38 C.F.R. § 4.124a, DC 8512 (1989), 70% is the maximum disability rating for major paralysis of "[c]omplete; all intrinsic muscles of hand, and some or all of flexors of wrist and fingers, paralyzed (substantial loss of use of hand)." If that were still the law, or if it were the only schedular criteria applicable for rating purposes, then the BVA decision would be valid. This, however, is not the correct result under an accurate application of the law.

The BVA decision applied the doctrine of reasonable doubt, 38 C.F.R. § 3.102, to assess the muscle damage as an injury separately ratable from the nerve damage. The BVA relied on 38 C.F.R. § 4.72 to assess the through and through wound as evidencing *moderately severe* damage to Muscle Group V under DC 5305, thus warranting a separate 30% disability rating. The amputation rule states in part

> The combined rating for disabilities of an extremity shall not exceed the rating for the amputation at the elective level, were amputation to be performed.

38 C.F.R. § 4.68. The BVA concluded, however, that the combined rating did not warrant an 80% disability, the maximum allowable under 38 C.F.R. § 4.71a, DC 5122, as if there were an arm amputation below insertion of deltoid, and under the amputation rule of 38 C.F.R. § 4.68. *See Moyer*, BVA 90–22873, at 4. While the maximum disability rating for damage to the peripheral nerves is 70% under the old 38 C.F.R. § 4.124a, DC 8512, and the maximum allowed under the schedule of ratings for the musculoskeletal system is 80% un-

der 38 C.F.R. § 4.72, DC 5122, these separate ratings cannot be combined under the amputation rule. Under the amputation rule of 38 C.F.R. § 4.68, the BVA is not authorized to award the separate 30% disability rating to Muscle Group V, in addition to the 70% for nerve damage, if it exceeds the total for amputation at the elective level—here, 80%. Under a proper application of the amputation rule, the disability rating should have been an 80% disability rating.

There are other schedular ratings that were ignored by the BVA, such as 38 C.F.R. § 4.71a, DC 5202, 5205–5213, and 38 C.F.R. § 4.73, DC 5306–5309. While a schedular rating could not exceed an 80% disability rating per the amputation rule, if all of the applicable code provisions were applied and separate ratings were assessed on the damage to the bones, muscles, and nerves in appellant's right arm and hand, then it would have become apparent that 38 C.F.R. § 3.321(b)(1) should have been considered by the Secretary "[t]o accord justice ... to the exceptional case where the schedular evaluations are found to be inadequate...." An exceptional circumstance would present such "factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards." 38 C.F.R. § 3.321(b)(1). The facts of this case reveal such exceptional circumstances. The BVA failed to apply all the applicable statutes and regulations to the facts, and did not provide adequate "reasons or bases" for not applying § 3.321(b)(1). The BVA also ignored the fact that Moyer was rated as 100% disabled until his benefits were abruptly reduced sometime between 1981 and 1983, and has been receiving special monthly compensation since 1968 for the total loss of use of his right arm and hand under the former 38 U.S.C. § 314(k) (now § 1114), 38 C.F.R. §§ 3.350(a) and 4.63. R. at 95. The case must be remanded for proper consideration of all the pertinent laws and regulations applicable to appellant's claim for an increased schedular disability rating and explanation as to whether 38 C.F.R.

§ 4.124a, DC 8512 was inadvertently omitted or purposefully deleted from the past two volumes of the Code of Federal Regulations.

### B.

■ Unemployability for purposes of a total disability rating is the issue that appellant emphasized in his brief. The appellee, in his motion for partial remand, admitted the deficiencies of the BVA decision in this regard. A permanent total disability exists "when such impairment is reasonably certain to continue throughout the life of the disabled person." 38 C.F.R. §§ 3.340(b), 4.15 (1991). It is undisputed that the damage to Moyer's right arm and hand is permanent. A total disability rating for compensation purposes may be assigned if the schedule of ratings equal 100%, or if the combination of disabilities is less than 100%, but "the service-connected disabilities are sufficient to produce unemployability." 38 C.F.R. § 3.341(a) (1991).

■ Moyer would be considered unemployable if employment were terminated because of his loss of use of his hand and arm, or where special consideration was given to him because of his disability, if he can satisfactorily show that he is unable to secure further employment. 38 C.F.R. § 4.18 (1991). Appellant has shown that he attempted sales jobs and political campaign work because of the limitations placed on his capabilities with the loss of use of his right arm and hand. Appellant has also stated that no employer will hire him on a full-time basis because he takes narcotics for his pain, and misses so many work days. With amputations and other residuals of traumatism shown to be of a static character, continuous unemployability must be shown from the date of incurrence to establish that it is a result of the disability. *Id.* However, the facts here clearly show that appellant's "employment was only occasional, intermittent, tryout or unsuccessful, or eventually terminated on account of the disability, [and, therefore], present unemployability may be attributed to the static disability." *Id.* The Secretary concedes that the BVA decision contains no discus-

sion of much of the evidence submitted by appellant in support of his claim of unemployability, including his own sworn oral testimony and written statements that he is unable to work because of the pain. Br. of Appellee at 6; R. at 100, 140, 141, 159, 210. It is the duty of the BVA to assess the credibility of the veteran's sworn testimony and other statements under *Wilson v. Derwinski,* 2 Vet.App. 16, 19–20 (1991) and to address appellant's pain to determine functional loss under 38 C.F.R. § 4.40 (1991). *Schafrath v. Derwinski,* 1 Vet.App. 589, 593 (1991); *Ferraro v. Derwinski,* 1 Vet. App. 326, 330 (1991); *Hatlestad v. Derwinski,* 1 Vet.App. 164, 167 (1991). The Court agrees with the Secretary that the case must be remanded for a complete analysis of the credibility or probative value of evidence submitted by or on behalf of the veteran in support of his claim, to address appellant's unemployability in light of the pain he suffers and the effect of narcotic painkillers, and for the BVA to articulate with reasonable clarity its "reasons or bases" for the rejection of such evidence in its decision, if it continues to reject that evidence. 38 U.S.C. § 7104(d)(1) (formerly § 4004); *Ohland v. Derwinski,* 1 Vet.App. 147, 150 (1991); *Gilbert v. Derwinski,* 1 Vet.App. 49, 56–57 (1990).

Moyer has never worked for more than six months, and the employment or volunteer work he performed was only on a part-time basis. Moyer has never performed "substantially gainful employment". The established VA policy is that "all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled." 38 C.F.R. § 4.16(b) (1991). Because Moyer has failed to meet a 100% disability under the schedular standards, the Director of Compensation and Pension Service should have submitted Moyer's claim for extra-schedular consideration, i.e., applied § 3.321(b)(1) as explained above. *Id.* The BVA decision fails to explain why this special consideration was not given to Moyer. R. at 8. The Secretary agrees that there is also no explanation as to why the BVA found no basis for allowance of the doctrine of rea-

sonable doubt as articulated in 38 U.S.C. § 5107(b) (formerly § 3007) and 38 C.F.R. § 3.102 (1991). R. at 7. The case is remanded for extra-schedular consideration and application of the doctrine of reasonable doubt, or an explanation as to the "reasons or bases" for rejection of the applicability of such consideration.

The BVA had before it Dr. Sen's analysis, which states that Moyer would "not [be] able to continue to function in gainful employment under ordinary circumstances, unless special arrangements can be made." R. at 238. A total disability renders it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. § 4.15 (1991). The average person functions under ordinary circumstances and is not given special arrangements. While 38 C.F.R. § 4.17(a) applies to pension cases, it appears that Moyer fits into the "marginal employment" category which is not incompatible with unemployability. The BVA decision failed to explain why or how Moyer was found to be capable of substantially gainful employment in light of the obvious facts showing that he has never been employed on a full-time basis. R. at 7. The case is also remanded to the BVA for reevaluation under the appropriate standards and an adequate statement of "reasons or bases" explaining its decision.

### C.

Appellant notes that the "disability rating of a qualified veteran who begins to engage in a substantially gainful occupation ... may not be reduced on the basis of the veteran having secured and followed a substantially gainful occupation unless the veteran maintains such an occupation for a period of 12 consecutive months." 38 U.S.C. § 1163 (formerly § 363). Br. of Appellant at 6–7. It is true that the appellant at no time was substantially employed for a period of twelve consecutive months; however, this statute is applicable only where the veteran is evaluated at a total disability and then reduced. Apparently, though absent from the record, a rating reduction occurred between 1981 and 1983. It is not clear whether 38 U.S.C. § 1163 or

38 C.F.R. §§ 3.343 and 3.344 were ever applied to appellant's claim before his 100% schedular disability rating was reduced to 70%. In light of the possible failure to. apply the proper statutory standard to appellant's claim when it was first reduced, upon remand, the Board may further wish to take into account 38 C.F.R. §§ 3.104, 3.105 (1991) (finality and revision of decisions based upon clear and unmistakable error), and 19.185(a), 19.187(a) (1991) (reconsideration upon obvious error of fact or law), depending on the outcome of the cases of *Russell v. Derwinski*, U.S.Vet. App. No. 90–396 and *Collins v. Derwinski*, U.S.Vet.App. No. 90–416, now consolidated and pending en banc determination by the Court.

### III. CONCLUSION

The Secretary's motion for summary affirmance is denied, and his motion for remand is granted with specific instructions as indicated in the foregoing opinion. Accordingly, to the extent that the errors are addressed above, the BVA decision is VACATED, and the case is REMANDED with instructions.