**Joe R. AMADOR, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 91–940.**

United States Court of Veterans Appeals.

June 22, 1992.

Before MANKIN, Associate Judge.

MEMORANDUM DECISION

MANKIN, Associate Judge:

Appellant appeals from a February 19, 1991, Board of Veterans' Appeals (BVA or Board) decision which refused to grant entitlement to an increased rating for cervical spine fracture residuals with a seventh cervical (C–7) vertebra deformity and traumatic arthritis of the sixth cervical (C–6) vertebra, currently rated as 20% disabling. The Secretary of Veterans Affairs (Secretary) filed a motion for summary affirmance to which appellant filed a motion in

opposition. The Court has jurisdiction of the case pursuant to 38 U.S.C. § 7252(a) (formerly § 4052(a)).

## I.

Joe R. Amador served in the United States Navy from September 1969 to August 1973. In February 1971, he was injured in an automobile accident while off duty and suffered a compression fracture of the C–7 vertebra. R. at 10, 22. In November 1974, the veteran was awarded service connection from the date of his separation from service for the residuals of a fracture of the seventh cervical vertebra with deformity shown by X ray rated as 10% disabling under 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5285. R. at 47.

On December 22, 1989, the veteran filed a claim for an increased disability rating. R. at 48. The Compensation and Pension Examination of February 1990 noted that the veteran continued to have pain in his neck, which sometimes radiated down his right shoulder and arm, especially when he drove a car or did strenuous activities. R. at 58. The examination of the cervical spine revealed moderate paravertebral muscle spasm, flexion forward limited to 60 degrees, extension backwards limited to 25 degrees, lateroflexion limited to 30 degrees, and rotation limited to 45 degrees. The diagnosis included: 1) old fracture of the seventh cervical vertebra, 2) degenerative disc disease of the cervical spine verified by a MRI dated December 1989, 3) recurrent arthralgias of the cervical spine, 4) recurrent arthralgias of the right upper extremity of undetermined etiology, 5) abnormal study, right upper extremity, median nerve carpal tunnel syndrome, mild, and 6) residual evidence of fracture of C–6 and C–7 with compression of superior aspect of C–7 and osteophyte formation anteriorly involving C–6. R. at 59, 61, 62.

The April 16, 1990, rating decision increased the disability rating to 20% for impairment of the cervical spine with C–7 abnormality and traumatic arthritis of C–6 under DC 5285–5290, effective February 2, 1989. There was a finding that "the right medial nerve carpal tunnel syndrome was probably not caused by the cervical vertebra fracture." Thus, the carpal tunnel syndrome was considered to be non-service-connected. R. at 63–64. The veteran filed his Notice of Disagreement in May 1990. R. at 68. The veteran submitted additional evidence describing the effects of his service-connected condition on his daily activities at home and at work, and contended that he is entitled to at least a 60% disability rating. R. at 75. His service representative raised some concern over the rating decision's finding that the nerve damage to the right upper extremity can be disassociated from the cervical spine injury and that the DC 8500 series should be considered for a secondary service-connected disability. R. at 79–80. The appeal proceeded to the BVA.

## II.

In its February 19, 1991, decision, the Board cited 38 C.F.R. § 4.21a, DC 5003, 5010, 5285, and 5290, to support its conclusion that the schedular criteria for a rating in excess of the currently assigned 20% for cervical spine fracture residuals with a C–7 deformity and traumatic arthritis of C–6 have not been met. *Joe R. Amador*, BVA 91–05363, at 5 (Feb. 19, 1991). The BVA noted that the veteran had been rated 10% for limitation of motion and an additional 10% for deformity of a vertebral body. *Id.* at 4. Under the schedular evaluation, DC 5285 (residuals of a fracture of a vertebra) is to be combined with DC 5290 (limitation of motion of the cervical spine) when the percentage of disability falls below 60%: "In other cases rate in accordance with definite limited motion or muscle spasm, adding 10 percent for demonstrable deformity of vertebral body." 38 C.F.R. § 4.71a, DC 5285 (1991). Arthritis, due to trauma, substantiated by X-ray findings under DC 5010 is to be rated as degenerative arthritis under DC 5003. Degenerative arthritis established by X-ray findings is to be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. 38 C.F.R. § 4.71a, DC 5003 (1991). Even with only slight limitation of motion, which is ratable as 10% disabling, it should

be added to another 10%, because of the muscle spasms evidenced in the veteran's medical records and the demonstrable deformity noted by the X rays.

In its evaluation of appellant's claim, the BVA failed to discuss or evaluate appellant's complaints of pain, the debilitating effects of the service-connected disability on his daily activities, and his request that 38 C.F.R. § 4.10 (1991) should have been applied to his claim. The BVA "must review all issues which are reasonably raised from a liberal reading of the appellant's substantive appeal." *Mingo v. Derwinski,* 2 Vet.App. 51, 54 (1992) (citing to *Myers v. Derwinski,* 1 Vet.App. 127, 129 (1991)). Section 4.10 states that the basis of disability evaluation is the ability "of the body as a whole, to function under the ordinary conditions of daily life including employment.... In this connection, it will be remembered that a person may be too disabled to engage in employment although he or she is up and about and fairly comfortable at home or upon limited activity." Even if not raised by appellant below, the Court has consistently held that "the BVA is not free to ignore its own regulations." *Karnas v. Derwinski,* 1 Vet.App. 308, 313 (1991) (citations omitted). The BVA failed to apply a pertinent regulation to appellant's claim.

In its decisions, the BVA is statutorily required to provide a "written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions." 38 U.S.C. § 7104(d)(1) (formerly § 4004(d)(1)); *see Gilbert v. Derwinski,* 1 Vet.App. 49 (1990). In its discussion, the BVA recognized that the cervical fracture residuals were productive of flexion limited to 60 degrees; however, it stated that "[s]uch limitation closer approximates slight rather moderate." *Amador,* BVA 91–05363, at 4–5. Here, there was no explanation as to why limited flexion of 60% is only slight rather than moderate nor any evidence in the record to support that conclusion.

The Board also failed to address appellant's concerns that the rating decision found that the carpal tunnel syndrome was "probably" not caused by the cervical vertebra fracture. Appellant contends that the cervical vertebra fracture causing the radiating pain to his right shoulder and arm should be considered a secondary service-connected disability and should be evaluated under the 38 C.F.R. § 4.71a, DC 8500 series (1991). The Board "may consider only independent medical evidence to support [its] findings." *Colvin v. Derwinski,* 1 Vet.App. 171, 175 (1991). There is no medical evidence in the record to support the rating decision's finding, nor is there any definite evidence indicating the cause of the carpal tunnel syndrome.

Because the Court finds that the BVA's discussion and evaluation are inadequate, we are compelled to overturn the Board's decision and remand this case for: 1) a complete analysis of the credibility or probative value of evidence submitted by or on behalf of the veteran in support of his claim; 2) application of section 4.10 to appellant's claim or provide "reasons or bases" why it is not applicable; 3) the BVA to address appellant's disability in light of the physical pain he suffers; 4) substantiation of the reasons or bases for the Board's assertion that 60% limitation on forward flexion more closely approximates slight rather moderate; 5) a new medical examination to evaluate the relationship between the residuals of the fracture of the cervical spine and the carpal tunnel syndrome to determine whether it is a secondary service-connected disability; 6) application of the benefit of the doubt doctrine of 38 U.S.C. § 5107(b) (formerly § 3007(b)) during the adjudication process; and 7) the BVA to articulate with reasonable clarity its "reasons or bases" for the rejection of such evidence in its decision, if it continues to reject that evidence. 38 U.S.C. §§ 5107(a) and 7104(d)(1) (formerly §§ 3007(a) and 4004(d)(1)); *Moyer v. Derwinski,* 2 Vet.App. 289, 294 (1992); *Smith v. Derwinski,* 1 Vet.App. 235, 237–38 (1991); *Ohland v. Derwinski,* 1 Vet.App. 147, 150 (1991); *Green v. Derwinski,* 1 Vet.App. 121, 124 (1991); *Gilbert,* 1 Vet. App. at 56–57.

## III.

After consideration of the supporting memoranda and review of the record, it is the holding of the Court that appellant has demonstrated that the BVA committed legal error which would warrant remand. Summary disposition is appropriate when as here, the issues are of relative simplicity, the issues are supported by binding precedent of the Court, and the outcome is not reasonably debatable. *See Frankel v. Derwinski,* 1 Vet.App. 23, 26 (1990).

The Secretary's motion is DENIED, the decision of the BVA is VACATED insofar as it is inconsistent with this opinion, and the case is REMANDED for further proceedings.

*It is so ordered.*