Citation Nr: 1237376 
Decision Date: 10/31/12 Archive Date: 11/09/12

DOCKET NO. 02-10 185 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Reno, Nevada


THE ISSUE

Entitlement to an extraschedular evaluation under 38 C.F.R. § 3.321(b)(1) for chronic dermatitis of the hands, elbows and feet.


REPRESENTATION

Veteran represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

V. Chiappetta, Counsel


INTRODUCTION

The Veteran served on active duty in the United States Marine Corps from September 1978 to October 1998.
This matter is before the Board of Veterans' Appeals (the Board) on appeal of a July 2000 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Reno, Nevada. In that decision, the RO granted the Veteran's service-connection claim for chronic dermatosis of the hands, and assigned a noncompensable (zero percent) disability rating effective August 11, 1999. The Veteran disagreed with the assigned initial rating, and perfected an appeal as to that issue. 

During the pendency of the appeal, the RO increased the Veteran's skin rating from 0 to 10 percent, also effective August 11, 1999, and recharacterized the disability as dermatitis of the hands, feet and elbows. See the RO's June 2006 rating decision. The Veteran has made clear his desire to proceed with his appeal. See AB v. Brown, 6 Vet. App. 35, 38 (1993) [when a veteran is not granted the maximum benefit allowable under the VA Schedule for Rating Disabilities, the pending appeal as to that issue is not abrogated].

In a December 2010 decision, the Board denied the Veteran's claim for an increased initial rating on a schedular basis only. The Board remanded the question of whether an extraschedular rating greater than 10 percent was warranted, for additional evidentiary development. Such was achieved, and the RO readjudicated the Veteran's claim in a June 2012 supplemental statement of the case (SSOC). The Veteran's claims folder has been returned to the Board for further appellate review.


FINDING OF FACT

The evidence in this case does not show that an exceptional disability picture exists such that the available schedular evaluations for the service-connected disability on appeal are inadequate.




CONCLUSION OF LAW

The criteria for an initial disability rating in excess of 10 percent on an extraschedular basis for the Veteran's service-connected dermatitis are not met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. § 3.321(b) (2012).


REASONS AND BASES FOR FINDING AND CONCLUSION

Stegall concerns

As noted above, in December 2010 the Board remanded the Veteran's claim for an initial rating greater than 10 percent for his service-connected dermatitis on an extraschedular basis. The Board instructed the agency of original jurisdiction (AOJ) to determine which VA Regional Office is the appropriate AOJ in view of the Veteran's last change in residence, to refer the Veteran's case to VA's Director of Compensation and Pension for consideration of entitlement to an extraschedular rating for service-connected dermatitis, and to readjudciate the claim.

The AOJ confirmed that the RO in Reno, Nevada is the AOJ in this case. It also referred the Veteran's dermatitis claim to the Director of Compensation and Pension for extraschedular consideration in January 2012. The Director responded in April 2012, and the response is located in the Veteran's VA claims folder. As noted above, the RO readjudicated the Veteran's claim in a June 2012 SSOC.

Thus, there is compliance with the Board's December 2010 remand instructions. See Stegall v. West, 11 Vet. App. 268, 271 (1998) [where the remand orders of the Board are not complied with, the Board errs as a matter of law when it fails to ensure compliance].

The Veterans Claims Assistance Act of 2000 (VCAA)

The Veterans Claims Assistance Act of 2000 (VCAA), codified in pertinent part at 38 U.S.C.A. §§ 5103, 5103A (West 2002 & Supp. 2012), and the pertinent implementing regulation, codified at 38 C.F.R. § 3.159 (2012), provide that VA will assist a claimant in obtaining evidence necessary to substantiate a claim but is not required to provide assistance to a claimant if there is no reasonable possibility that such assistance would aid in substantiating the claim. They also require VA to notify the claimant and the claimant's representative, if any, of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim. As part of the notice, VA is to specifically inform the claimant and the claimant's representative, if any, of which portion, if any, of the evidence is to be provided by the claimant and which part, if any, VA will attempt to obtain on behalf of the claimant. 

The notice requirements of 38 U.S.C. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a "service connection" claim, defined to include: (1) veteran status; (2) existence of a disability; (3) a connection between the veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. See Dingess v. Nicholson, 19 Vet. App. 473 (2006).

The Board also notes that the United States Court of Appeals for Veterans Claims (Court) has held that the plain language of 38 U.S.C.A. § 5103(a) requires that notice to a claimant pursuant to the VCAA be provided "at the time" that, or 
"immediately after," VA receives a complete or substantially complete application for VA-administered benefits. Pelegrini v. Principi, 18 Vet. App. 112, 119 
(2004).

With respect to the Veteran's claim for a higher initial disability rating for his service-connected dermatitis disability, the Board notes that in cases where service connection has been granted and an initial disability rating and effective date have been assigned, the typical service-connection claim has been more than substantiated, it has been proven, thereby rendering section 5103(a) notice no longer required because the purpose that the notice is intended to serve has been fulfilled. See Dingess, 19 Vet. App. at 490-91; see also VAOPGCPREC 8- 2003 (December 22, 2003). Thus, because service connection for the Veteran's thoracolumbar spine disability has already been granted, VA's VCAA notice obligations with respect to the issue of entitlement to a higher initial evaluation for this disability are fully satisfied, and any defect in the notice is not prejudicial. See Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007); see also Goodwin v. Peake, 22 Vet. App. 128, 137 (2008) [where a claim has been substantiated after the enactment of the VCAA, the appellant bears the burden of demonstrating any prejudice from defective VCAA notice with respect to any downstream elements]. 

Concerning the VA's duty to assist, the Board notes that the Veteran's service treatment records, post-service VA treatment records, and his and co-worker's lay statements of argument have been obtained. Neither the Veteran nor his representative has identified any outstanding evidence, to include any other medical records, that could be obtained to substantiate the Veteran's appeal.

As discussed in the Board's December 2010 decision, the Veteran appeared for VA skin examinations in April 2000, October 2005, February 2007 and June 2007. For the purposes of this current inquiry [entitlement to an higher initial rating on an extraschedular basis], the Board again finds that these examination reports are adequate for adjudication purposes in that that each include discussion in sufficient detail addressing the medical state of the Veteran's skin disorder in the context of his relevant clinical and occupational history, and that all findings and conclusions are supported by clinical rationale. 

As was also discussed in the Board's December 2010 decision, the Veteran failed to report to his most recently scheduled VA skin examination, although correspondence regarding this examination was sent to his last known mailing address at the time, and was not returned to VA. The Veteran's representative has since sent correspondence to VA on the Veteran's behalf without explanation of why the Veteran did not report to his examination or a request that the examination be rescheduled. As such, the Board incorporates its previous December 2010 finding herein, that no further expenditure of effort is warranted to develop the pending rating claim. See 38 C.F.R. § 3.655(b) (2012); Wood v. Derwinski, 1 Vet. App. 190, 193 (1991) [The "duty to assist is not always a one-way street. If a veteran wishes help, he cannot passively wait for it in those circumstances where he may or should have information that is essential in obtaining the putative evidence."]. 

Accordingly, the Board finds that VA's duty to assist with respect to obtaining VA examinations or opinions concerning the issue on appeal has been met. 38 C.F.R. § 3.159(c)(4); Barr v. Nicholson, 21 Vet. App. 303 (2007). 

In short, the Board has carefully considered the provisions of the VCAA, in light of the record on appeal and, for the reasons expressed above, finds that the development of the Veteran's claim has been consistent with said provisions. The Board is satisfied that any procedural errors in the originating agency's development and consideration of the issue on appeal were insignificant and nonprejudicial to the Veteran. 

The Veteran has been accorded ample opportunity to present evidence and argument in support of his claim. See 38 C.F.R. § 3.103 (2012). He has retained the services of a representative, and declined the opportunity for a personal hearing before the Board. Accordingly, the Board will address the issue on appeal. 

Relevant law and regulations

Disability evaluations are determined by the application of the VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4 (2012). The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. See 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 3.321(a), 4.1 (2012).

Ordinarily, the VA Rating Schedule will apply unless there are exceptional or unusual factors which would render application of the schedule impractical. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993). According to the regulation, an extraschedular disability rating is warranted upon a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular schedular standards. See 38 C.F.R. § 3.321(b)(1) (2012), Fanning v. Brown, 4 Vet. App. 225, 229 (1993).

In Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990), the United States Court of Appeals for Veterans Claims (the Court) stated that "a veteran need only demonstrate that there is an 'approximate balance of positive and negative evidence' in order to prevail." To deny a claim on its merits, the preponderance of the evidence must be against the claim. See Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert, 1 Vet. App. at 54. 

Analysis

The Veteran seeks a higher disability rating for his service-connected dermatitis, which is currently evaluated 10 percent disabling. 

The issue of the Veteran's entitlement to an increased disability rating on a schedular basis was denied by the Board in its December 2010 decision. The Veteran did not appeal this decision, and it became final. 38 C.F.R. § 20.1100 (2012). Significantly, the Veteran has submitted no additional evidence relative to this claim subsequent to the Board's December 2010 decision. In this case, the Board's analysis will therefore focus solely on the matter of the Veteran's entitlement to an extraschedular rating.

In essence, the Veteran asserts that his dermatitis disability manifests in cracking, fissures and painful lesions of the hands that, during times of flare-up, interfere with his employment, thus warranting an extraschedular rating greater than 10 percent. 

Although the Board may not assign an evaluation on an extraschedular basis in the first instance, when the question is raised either by the claimant, or reasonably by the evidence of record, the RO or Board must specifically decide whether to refer the claim to the Director of VA's Compensation and Pension Service under 38 C.F.R. § 3.321 for consideration of the matter. Barringer v. Peake, 22 Vet. App. 242 (2008). 
The Board previously determined in December 2010 that the question of whether the Veteran was entitled to an increased evaluation on an extraschedular basis was raised, and the claim was referred to the Director of VA's Compensation and Pension Service on an extraschedular basis. In April 2012, after reviewing the Veteran's claims folder, the Director determined that such an evaluation was not assignable because the evidence of record did not demonstrate that the Veteran's skin condition had a marked affect on his employment. As such, the Director determined that an exceptional disability picture that would render the available schedular standards impractical did not exist. See the April 23, 2012 memorandum from the Director of VA's Compensation and Pension Service, pages 1 and 2. 
After review of the lay and medical evidence of records as a whole, the Board agrees with the Director of Compensation and Pension, and finds that an extraschedular disability rating greater than 10 percent is not warranted for the Veteran's dermatitis disability. 

In April 2000, a VA examiner identified several cracks of skin on the Veteran's hands and fingers, and a diagnosed the Veteran with chronic dermatosis of the hands. In subsequent letters dated in July 2004, the Veteran's employer and a fellow employee indicated that the Veteran works as a Heavy Equipment Mobile Mechanic, and that his hands crack and bleed to the point that he can't hold a wrench or use a welder. See the July 30, 2004 letters from J.K. and J.T. Notably, the Veteran's employer also indicated in his July 2004 letter that the Veteran has collapsed to the ground at work due to back pain, and that the Veteran's arms and knees have given him problems that have also interfered with his job. The Veteran's employer indicated that he had to send the Veteran home due to "poor health and physical condition" at times, and specified that he advised the Veteran to seek out a new field of employment due to his bad back, and not because of his hands. See the July 30, 2004 letter from J.K. 

The Veteran appeared for another VA examination in October 2005. The examiner diagnosed the Veteran with psoriasiform dermatitis of the hands and elbows, and scaling of the feet. The examiner indicated a belief that the Veteran "needs to have light duty, where he is not exposed to a lot of wet work or friction, for his hands to heal." 
Subsequently, at a February 2007 VA examination, the Veteran indicated that he was working in maintenance for a park service, and uses tools frequently that irritate and peel his skin during active phases. In June 2007, another VA examiner indicated that the Veteran's symptoms are so severe that they limit his activities and what he is able to do at work. See the June 2007 VA examiner's report, page 3. 

As discussed above, and in the Board's December 2010 decision, the Veteran did not appear for a subsequent VA skin examination. 

While it is clear that the Veteran's service-connected dermatitis affects the Veteran's ability to use certain tools at certain times while performing his work duties, the evidence of record in no way demonstrates that the Veteran's skin disability causes marked interference with employment. Indeed, the evidence does not suggest, and the Veteran does not contend that he has had to miss any time from work due to his skin disability alone during the period under review, or that he was forced to seek a new line of work due to his skin disability. The Veteran has worked as a mechanic or in maintenance during the entirety of the appeal period, and as noted above, the Veteran's former employer acknowledged the effects of the Veteran's dermatitis on his work duties [preventing him from holding a wrench or using a welder], but specified that he recommended the Veteran find a new line of employment due not to his skin disorder, but to his "bad back." 

While employment may be made more difficult by the Veteran's skin disability, this alone does not present an exceptional or unusual disability picture and is not reflective of any factor which takes the Veteran outside of the norm. Indeed, any occupational impairment due to the skin disability is specifically contemplated in the 10 percent rating which is assigned. See Moyer v. Derwinski, 2 Vet. App. 289, 293 (1992); see also Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993) [noting that the disability rating itself is recognition that industrial capabilities are impaired].

The Board adds that there is no evidence that the Veteran's service-connected skin disability has resulted in the Veteran having frequent periods of hospitalization for related symptoms, and the Veteran has not asserted as much.

Based on the evidence of record, the Board concludes that the assignment of an extraschedular rating greater than the currently-assigned 10 percent for the Veteran's service-connected dermatitis disability is not warranted. The case does not present an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular schedular standards. As the preponderance of evidence is against the Veteran's claim, the benefit sought on appeal is denied.


ORDER

Entitlement to an extraschedular rating greater than 10 percent for dermatitis of the hands, elbows and feet is denied.



____________________________________________
L. M. BARNARD
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs