Citation Nr: 1602954 
Decision Date: 01/29/16 Archive Date: 02/05/16

DOCKET NO. 09-24 133 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Medical and Regional Office Center in Wichita, Kansas


THE ISSUE

Entitlement to an extraschedular rating for residuals of a left ankle fracture.


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

J. Hager, Counsel


INTRODUCTION

The Veteran had active service from June 1975 to May 1977.
This case initially came before the Board of Veterans' Appeals (Board) on appeal from an April 2008 rating decision issued by the Department of Veteran's Affairs (VA) Appeals Management Center (AMC). In that decision, the AMC granted entitlement to service connection for residuals of a left ankle fracture and assigned a 20 percent rating effective the January 27, 2003 date of claim. The Veteran timely appealed the assigned initial rating. The VA Regional Office (RO) in Wichita, Kansas retained jurisdiction over the claim and forwarded the appeal to the Board. In August 2010, the Veteran testified during a hearing at the Wichita RO before the undersigned; a transcript of that hearing is of record.

In April 2014, the Board remanded the claim. In August 2015, the Board bifurcated the claim to reflect different dispositions of the claims for a higher initial schedular rating and an extraschedular rating. Locklear v. Shinseki, 24 Vet. App. 311, 315 (2011) (bifurcation of a claim generally is within VA's discretion). The Board denied the claim for a higher initial schedular rating and remanded the claim for an extraschedular rating to the agency of original jurisdiction (AOJ) for the AOJ to refer this matter to the Director of Compensation (Director) for consideration of an extraschedular rating under 38 C.F.R. § 3.321(b)(1). The AOJ referred this matter to the Director, who, after receiving a memorandum recommending that an extraschedular rating be granted, denied entitlement to an extraschedular rating. For the reasons indicated below, the claim is now properly before the Board for a decision on the merits.


FINDINGS OF FACT

1. The criteria for rating ankle disabilities do not adequately contemplate the symptoms of the Veteran's left ankle fracture residuals, and these symptoms cause marked interference with employment.

2. The impairment caused by the Veteran's left ankle fracture residuals most nearly approximates an additional 20 percent rating, beyond the current schedular rating of 20 percent, equivalent to the highest available schedular rating under the criteria for rating ankle disabilities.
CONCLUSION OF LAW

The criteria for an extraschedular rating of 20 percent for left ankle fracture residuals have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.3, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code (DCs) 5270-5274 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Generally, disability rating are determined by evaluating the extent to which a Veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing his symptomatology with the criteria set forth in VA's Rating Schedule. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. However, to accord justice in the exceptional case where the criteria in VA's Rating Schedule are found to be inadequate, an extraschedular rating that is commensurate with the average earning capacity impairment caused by the service connected disability is warranted. 38 C.F.R. § 3.321(b)(1). Such a rating is warranted when the case presents such an unusual disability picture with related factors such as marked interference with employment as to render impractical the application of the regular schedular standards. Id.

When the Board finds that an extraschedular rating may be warranted based on the above factors, it cannot grant an extraschedular rating in the first instance. Anderson v. Shinseki, 23 Vet. App. 423, 428-429 (2009). Rather, it must remand the claim to the AOJ for referral to the Director. See Thun v. Peake, 22 Vet. App. 111 (2008), aff'd sub nom. Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). The Board did so in this case in August 2015. The AOJ referred the claim for an extraschedular rating to the Director. In an unsigned September 2015 memorandum, the AMC recommended to the Director that an extraschedular rating be granted. In an October 2015 decision, the Director denied an extraschedular rating, and the AOJ continued the denial in a supplemental statement of the case later that month. The Director's decision is not evidence, but, rather, the de facto AOJ decision, and the Board must conduct de novo review of this decision. Wages v. McDonald, 27 Vet. App. 233, 238-39 (2015) (holding that the Board conducts de novo review of the Director's decision denying extraschedular consideration). Recently, the Court reaffirmed that the Board has jurisdiction to review the entirety of the Director's decision denying or granting an extraschedular rating and elaborated that the Board is authorized to assign an extraschedular rating when appropriate. Kuppamala v. McDonald, No. 14-2449, 2015 WL 9584022, __ Vet. App. __ (Dec. 30, 2015).

For the following reasons, the Board finds that an extraschedular rating in this case is appropriate. As noted in the Board's August 2015 remand, the Veteran reported weakness, stiffness, heat, instability and fatigability on the October 2003 VA examination and also indicated at that time that he used a brace and cane. On the February 2008 VA examination, the Veteran indicated that he was unable to walk more than a few yards and unable to stand for more than a few minutes. Moreover, the Veteran stated during the June 2014 VA examination that he used a walker constantly. In addition, during the Board hearing, the Veteran indicated that he took a significant amount of Tylenol for his left ankle pain, enough to upset his stomach. Hearing Transcript, at 5-6.

The Veteran has consistently complained of pain, which is not specifically listed in the criteria for rating the ankle, but pain is contemplated in the rating criteria for all musculoskeletal disabilities, and therefore it does not need to be identified in each individual code to indicate its inclusion. 38 C.F.R. § 4.59; see Burton v. Shinseki, 25 Vet.App. 1, 5 (2011) (holding that § 4.59 applies to "joint pain in general" and is not limited to joint pain due to arthritis); see also 38 C.F.R. §§ 4.40 4.45. Symptoms such as weakness and fatigability are also arguably contemplated under the regulations requiring consideration of the extent that a veteran may have additional functional impairment above and beyond the limitation of motion objectively demonstrated, such as during times when his symptoms are most prevalent ("flare-ups") due to the extent of his pain (and painful motion), weakness, premature or excess fatigability, and incoordination. DeLuca v. Brown, 8 Vet. App. 202, 204-7 (1995); see also 38 C.F.R. §§ 4.40, 4.45. The other symptoms are not, however, contemplated by the criteria for rating the ankle, discussed below. Significantly, the June 2014 VA examiner indicated that the Veteran's inability to stand or walk without a walker had a functional impact on his ability to work. The evidence thus shows symptoms not contemplated by the rating criteria that cause marked interference with employment. The Board therefore finds that an extraschedular rating is warranted.

The only remaining question is what rating should be assigned. As noted by the Court, "[b]ecause the nature of extraschedular consideration requires that the disability picture be unique and not contemplated by the rating schedule, there logically is no guidance as to the specific rating that should be assigned in any particular case." Kuppamala, 2015 WL 9584022, at *11, n. 7 (citing Floyd v. Brown, 9 Vet. App. 88, 97 (1996)). The criteria for rating the ankle provide for a maximum schedular rating of 40 percent for ankylosis of the ankle.

The Board notes that the Veteran was found disabled by the Social Security Administration (SSA) in 1993. Although the primary disability was bilateral knee disability with foot drop, the left ankle was cited in the SSA decision as well as the medical records underlying it. The decision and medical records noted limited motion including minimal flexion. Although the Veteran indicated on the October 2003, April 2008, and June 2014 VA examinations that he was not working, the fact that a claimant may be presently unemployed or retired does not foreclose the possibility that service-connected disability may cause marked interference with employment or that other factors relevant to the extraschedular issue do not exist. See Moyer v. Derwinski, 2 Vet. App. 289, 294 (1992) (Court remanded case for the Board to address the extraschedular issue though veteran had never worked for more than six months); 38 C.F.R. § 4.2 ("Each disability must be considered from the point of view of the veteran working or seeking work." (emphasis added)). Given that the Veteran's left ankle disability played a role in the SSA's determination finding that he was unemployable and the medical evidence that his left ankle disability caused an inability to stand or walk without a walker which would significantly impact his ability to work, along with his lay testimony that the foot just "hangs there," see Board Hearing Transcript, at 4, the Board finds that an extraschedular rating of 20 percent for left ankle injury residuals is warranted. This will result in a combined rating of 40 percent, see 38 C.F.R. § 4.25 (2015), which will approximate the maximum schedular rating, which would be warranted for ankylosis of the ankle under DC 5270.

As the preponderance of the above evidence reflects that an extraschedular rating higher than 20 percent is not warranted, the benefit of the doubt doctrine is not for application. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 4.3. In addition, with regard to VA's duties to notify and assist under the Veterans Claims Assistance Act of 2000 (VCAA), as noted in the Board's August 2015 remand, the Veteran's rating claim arises from his disagreement with the initial rating assigned in connection with the grant of service connection for his left ankle fracture residuals. Where an underlying claim for service connection has been granted and there is disagreement as to "downstream" questions, the claim has been substantiated and there is no need to provide additional VCAA notice or prejudice from absent VCAA notice. Hartman v. Nicholson, 483 F.3d 1311, 1314-15 (Fed. Cir. 2007). Moreover, VA fulfilled its duty to assist the Veteran in obtaining identified and available evidence needed to substantiate the claim and affording him multiple adequate VA examinations. There is thus no evidence that additional records have yet to be requested, or that additional examinations are in order. For these reasons and those stated above, the claim for an extraschedular rating for left ankle fracture residuals has been decided on the merits.
 

ORDER

An extraschedular rating of 20 percent, in addition to the current schedular 20 percent rating, is granted, subject to controlling regulations governing the payment of monetary awards.



____________________________________________
B. C MORTON
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs