Citation Nr: 1438751 
Decision Date: 08/29/14 Archive Date: 09/03/14

DOCKET NO. 09-01 622 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUE

Entitlement to an initial rating in excess of 50 percent for posttraumatic stress disorder (PTSD), to include a total disability rating based on individual unemployability (TDIU).


ATTORNEY FOR THE BOARD

Megan Marzec, Associate Counsel



INTRODUCTION

The Veteran had active service from July 1967 to October 1990.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a January 2008 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina, that granted service connection for PTSD and assigned a 50 percent rating effective April 29, 2004. The Veteran appealed for a higher rating.

In a March 2010 decision, the Board denied an initial rating in excess of 50 percent for PTSD. The Veteran appealed the decision to the United States Court of Appeals for Veterans Claims (Court). In a February 2012 memorandum decision, the Court vacated the Board decision and remanded the matter for further readjudication.

On another matter, the claim for a total disability rating based on individual unemployability due to service-connected disability (TDIU) was denied in a May 2009 rating decision, and the Veteran did not appeal the decision. However, in a statement received by the Board in September 2012, the Veteran indicated that a TDIU be considered as part of his increased rating claim. Thus, the Veteran has raised the issue of entitlement to a TDIU as part of his claim for a higher initial rating for PTSD. Rice v. Shinseki, 22 Vet. App. 447 (2009).

In December 2012, the Board remanded the issues currently on appeal for further development. The issues have now been returned for additional appellate review.

The Board notes that, in addition to the paper claims file, there is a Virtual VA electronic claims file associated with the Veteran's claim.



FINDINGS OF FACT

1. For the entirety of the period on appeal, the Veteran's PTSD was manifested by occupational and social impairment with reduced reliability and productivity.

2. The Veteran is unemployed; his service-connected disability is not of such severity as to preclude substantially gainful employment.


CONCLUSIONS OF LAW

1. The criteria for an initial disability rating in excess of 50 percent for PTSD have not been met or approximated. 38 U.S.C.A. §§ 1155, 5107(b) (West 2002); 38 C.F.R. 4.3, 4.7, 4.130, Diagnostic Code 9411 (2013). 

2. The criteria for the assignment of a TDIU are not met. 38 U.S.C.A. §§ 1155, 5102, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.159, 3.321, 3.340, 3.341, 4.16, 4.19 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

VA has a duty to notify and a duty to assist the Veteran in substantiating his claim for VA benefits. 38 U.S.C.A. §§ 5103, 5103A (West 2002); 38 C.F.R. §§ 3.159, 3.326(a) (2013).

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical evidence or lay evidence that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002). In accordance with 38 C.F.R. § 3.159(b)(1), proper notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide.

In this case, notice fulfilling the requirements of 38 C.F.R. § 3.159(b) was furnished to the Veteran in May 2004, prior to the date of the issuance of the appealed January 2008 rating decision. Since the issue in this case (entitlement to assignment of a higher initial rating) is a downstream issue from that of service connection (for which a notice letter was duly sent in May 2004), another notice is not required. VAOPGCPREC 8-2003 (Dec. 22, 2003). It appears that the Court has also determined that the statutory scheme does not require another notice letter in a case such as this - where the Veteran was furnished proper notice with regard to the claim of service connection itself. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). As such, the Board finds that the RO fulfilled its duty to notify. 

The Board further notes that a November 2008 letter informed the Veteran about how a disability rating and an effective date for the award of benefits are assigned in cases where service connection is warranted. Id. While this letter was furnished after the issuance of the appealed rating decision, the appeal was subsequently readjudicated in a Supplemental Statement of the Case issued in December 2008. This course of corrective action fulfills VA's notice requirements. See Mayfield v. Nicholson, 499 F.3d 1317 (Fed. Cir. 2007). 

VA has also fulfilled its duty to assist in obtaining the identified and available evidence needed to substantiate the claims adjudicated in this decision. The RO has either obtained, or made sufficient efforts to obtain, records corresponding to all treatment described by the Veteran. 

The Veteran was afforded VA PTSD examinations in January 2008 and April 2013. The VA examinations are fully adequate for the purposes of adjudication. They include a review of the record, interview, clinical findings, and conclusions by VA clinical psychologists. See Barr v. Nicholson, 21 Vet. App. 303 (2007). 

Overall, there is no evidence of any VA error in notifying or assisting the Veteran that reasonably affects the fairness of this adjudication.

Increased Rating

Legal Criteria

Disability ratings are determined by the application of the VA's Schedule for Rating Disabilities. 38 C.F.R. Part 4 (2013). The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.321(a), 4.1 (2013).

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the Veteran's disability. 38 C.F.R. §§ 4.1, 4.2 (2013); Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991). 

If the disability more closely approximates the criteria for the higher of two ratings, the higher rating will be assigned; otherwise, the lower rating is assigned. 38 C.F.R. § 4.7. 

A claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Hart v. Mansfield, 21 Vet. App. 505 (2007); Fenderson v. West, 12 Vet. App. 119 (1999). 

PTSD is rated under 38 C.F.R. § 4.130, Diagnostic Code 9411. This diagnostic code uses the general rating formula for mental disorders other than eating disorders. The Veteran's service-connected PTSD is currently rated at 50 percent disabling for the period on appeal.

A 50 percent rating for PTSD is warranted when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing effective work and social relationships. 38 C.F.R. § 4.130, Diagnostic Code 9411. 

A 70 percent rating for PTSD is warranted when there is occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and inability to establish and maintain effective relationships. 38 C.F.R. § 4.130, Diagnostic Code 9411.

The maximum schedular rating of 100 percent for PTSD is warranted when there is total occupational and social impairment due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of close relatives, own occupation or own name. 38 C.F.R. § 4.130, Diagnostic Code 9411. 

In addition, when evaluating a mental disorder, the rating agency shall consider the frequency, severity, and duration of psychiatric symptoms, the lengths of remissions, and the Veteran's capacity for adjugment during periods of remission. 38 C.F.R. § 4.126(a) (2013). The rating agency shall assign a rating based on all evidence of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination. Id. However, when rating the level of disability from a mental disorder, the rating agency will consider the extent of social impairment, but shall not assign a rating on the basis of social impairment. 38 C.F.R. § 4.126(b). 

The use of the phrase "such symptoms as," followed by a list of examples, provides guidance as to the severity of symptomatology contemplated for each rating. Use of such terminology permits consideration of items listed as well as other symptoms and contemplates the effect of those symptoms on the claimant's social and work situation. See Mauerhan v. Principi, 16 Vet. App. 436 (2002); see also 38 C.F.R. § 4.130. VA must consider whether the Veteran has deficiencies in most of the following areas: work, school, family relations, judgment, thinking, and mood. Bowling v. Principi, 15 Vet. App. 1, 11 (2001). In Vazquez-Claudio v. Shinseki, 713 F.3d 112 (Fed. Cir. 2013), the Federal Circuit stated that "a veteran may only qualify for a given disability rating under § 4.130 by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration." It was further noted that "§ 4.130 requires not only the presence of certain symptoms but also that those symptoms have caused occupational and social impairment in most of the referenced areas."

In rendering the decision below, the Board has relied, and least in part, on GAF scores that mental health professionals have assigned to evaluate the Veteran. The GAF score is based on all of the Veteran's psychiatric impairments. A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant), or a major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work). 

A GAF score of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). 

A GAF score of 51-60 represents moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with coworkers). 

A GAF score of 61-70 represents mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, and has some meaningful interpersonal relationships.
 
While particular GAF scores are not contained in the VA schedule of ratings for mental disorders, 38 C.F.R. § 4.130, they are a useful tool in assessing a Veteran's disability and assigning disability evaluations. However, they are just one of many factors considered when determining an evaluation. 

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under laws administered by the Secretary. The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 1507 (West 2002); 38 C.F.R. § 3.102 (2013); see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996).

Evidence

In October 2003, the Veteran sought treatment at the VA Mental Health Clinic (MHC) based upon a referral for substance abuse counseling. Mental status examination showed that the Veteran was alert, but had a depressed mood and constricted affect. He denied experiencing suicide or homicide intent as well as any delusions or hallucinations. The referring examiner in September 2003 made a DSM IV Axis I diagnosis of alcohol and cocaine dependence. He assigned a GAF score of 55. 


The Veteran sought private psychiatric treatment from J.L., MD in April 2004. Dr. J.L. noted the Veteran's military history. He observed present psychiatric symptoms including insomnia, restricted affect, irritability, memory difficulties and hypervigilance. Mental status examination showed depressed mood, "severely restricted" affect and slowed thought process. However, there was no evidence of suicide/homicide intent or delusions/hallucinations. Dr. J.L. diagnosed PTSD, assigned a GAF score of 30, and provided medication. He also commented that the Veteran's PTSD symptoms render him permanently and totally disabled. 

The Veteran again sought treatment from Dr. J.L. in June and August 2004. Dr. J.L. noted that the Veteran continued to report anxiety and depressive symptoms. Mental status examination showed anxious and depressed mood, restricted affect, linear thought process, fair attention and fair judgment and insight. The Veteran reported no suicidal ideation, hallucinations or delusions. Dr. J.L. did not provide a GAF score. 

A VA MHC note from September 2004 reflected that the Veteran was concerned over daily functioning but not substance use. The Veteran presented himself as well-groomed and cooperative. He did not affirm experiencing delusions or hallucinations and denied any homicide or suicide ideation. The examiner noted that the Veteran had poor insight into substance abuse problems and diagnosed cocaine dependence and depression NOS. He assigned a GAF score of 55 and noted to continue with motivational interviewing to improve the Veteran's mood and insight into substance abuse problems. 

VA MHC notes from March 2006 reflect that the Veteran underwent a PTSD evaluation. He described stressors experienced during active military service. His present symptoms included sleep disturbances, social isolation, thought avoidance, hyperarousal and depressed mood. The Veteran described his symptoms as causing "moderate" distress in social and occupational function. Behaviorally, the examiner noted the Veteran had fair hygiene, restricted affect, and passive suicide ideation. However, no homicidal or suicidal intent was present; nor were there any hallucinations or delusions. The examiner provided a GAF score of 50. 

In June 2006, E.H., MD wrote a letter summarizing the Veteran's psychiatric symptoms. Dr. E.H. stated that he treated the Veteran in March 2006. He noted the Veteran's symptoms of sleep disturbances, flashbacks, anxiety attacks, social impairment, and intrusive thoughts. He found the Veteran's "working memory is 100% impaired." Dr. E.H. also stated that the Veteran affirmed experiencing audio and visual hallucinations. Additionally, the Veteran expressed suicide ideation. Dr. E.H. opined that the Veteran is "moderately compromised" in social relationships and unable to maintain employment. He diagnosed PTSD and major depression and assigned a GAF score of 30. 

A VA MHC treatment note from November 2007 reflects that the Veteran reported similar symptoms on his prior VA MHC visits and sought continuing treatment for depressive symptoms. His mental status was unchanged from prior VA MHC visits. The examiner provided a GAF score of 50. 

The Veteran was afforded a VA PTSD examination in January 2008. The Veteran affirmed experiencing PTSD symptoms surrounding flashbacks, avoidance and increased arousal. He presented himself to the examiner as casually dressed with a constricted affect. His mood was depressed. The examiner observed that the Veteran was oriented to time, person, and place without evidence of delusions or hallucinations; and he was able to understand the outcome of his behavior. The Veteran did not demonstrate inappropriate behavior to the examiner. Although homicidal thoughts were absent, the Veteran expressed suicidal thoughts. His remote memory was moderately impaired and his recent and immediate memory was mildly impaired. The examiner made the following DSM-IV Axis I diagnoses: PTSD chronic mild, dysthymic disorder, and history of alcohol and substance abuse. He assigned a GAF score of 55 for the past two years. The examiner explained that the Veteran was socially isolated. However, he also opined that the PTSD symptoms did not result in total occupational and social impairment. 

A VA MHC note, dated April 2008, showed a GAF score of 40 during the past year and a present score of 50. The note focused on substance abuse problems. Additional VA MHC notes from August 2008, February 2009 and July 2009 show that the Veteran maintained appropriate grooming and hygiene. Hallucinations and delusions were absent. Although the February 2009 note referenced chronic passive suicidal ideation, the Veteran did not affirm any suicidal or homicidal intent or plan.

After July 2009, the Veteran did not seek psychiatric treatment at a VA facility until 2013. A VA MHC noted dated April 2013 shows that the Veteran presented as distressed but was notably vague and difficult to question. He was resistant to providing specifics of his substance abuse problems and minimized the negative impact of substance abuse in his life. He reported symptoms such as sleep disturbance, hypervigilance, anger, depression and avoidance symptoms. The Veteran presented as oriented x4 and casually attired with fair hygiene and grooming. Upon mental status examination, the Veteran was vague in his answers, and presented as depressed and irritable. His mood was congruent and generally flat. He reported suicidal ideation a few times a week but denied a specific plan and denied a history of previous attempts. He reported that he had seen or heard things at night when he has woken up, but he denied visual and auditory hallucinations during the day. His insight was poor, judgment was fair to poor, and memory and attention were within normal limits. The VA psychologist assigned a GAF score of 55. 

Records received from the Social Security Administration (SSA) include the report of a psychological assessment. Significantly, the report indicates that the functional limitations experienced by the Veteran, as a result of his psychiatric disorder, were no more than moderate. The examiner also indicated that the Veteran would be capable of performing simple, repetitive, and routine tasks in a low stress environment. The Board interprets this to mean that the Veteran would be capable of working in a low stress environment.

VA MHC notes from May, June and July 2013 show similar symptoms with slight improvement and assigned GAF scores ranging from 60 to 65. 

Also of record are court records pertaining to a May 2012 domestic complaint. Specifically, the Veteran's girlfriend complained that he had threatened to evict her and their children from the home they co-habitate. A contemporaneous record includes the report that the Veteran had knocked the phone out of her hand when attempting to contact the police. There is no indication that there were any physical injuries, or that the Veteran was charged with any crime. 

In April 2013 the Veteran was afforded another VA PTSD examination. The examiner reviewed the claims file and recited the Veteran's reported history. The Veteran reported that he had been in a relationship with his girlfriend for nearly 13 years and he reported having "heated arguments several times a week." He reported having 4 daughters and noted that he had not had contact with his oldest two daughters for over 30 years. He denied engaging in social activities or having notable friends. He reported occasionally attending church with his mother. He denied any part-time work welding or in construction since 2008. He reported that his symptoms had been worse over the past five years and provided information when specifically presented with symptoms including lack of sleep, panic attacks, nightmares, occasional suicidal thoughts without plan or intent, intrusive thoughts and flashbacks. He also admitted to two incidents of domestic violence involving the police in April 2012 and May 2012. The examiner noted that the Veteran was a "particularly poor informant" and that "many of his self-reported symptoms were too vague or ill-defined to warrant such a diagnosis." Nonetheless, due to his valid history, the examiner confirmed the diagnosis of PTSD and also diagnosed cocaine abuse and alcohol abuse with a "notable history . . . including use since his last C&P mental health examination in 2008." 
 
Upon mental status examination the Veteran was guarded and responded with vague and noncommittal answers. His hygiene and grooming were fair to poor; his gross motor functioning was generally intact. The examiner reported that his default speech was low and mumbled although he was able to articulate better when asked to do so. The Veteran was alert, attentive and oriented to person, place, time and situation, and his immediate and recent memories were intact. The examiner noted that his though processes were logical and organized and there was no evidence of delusional thought content or perceptual disturbances such as auditory or visual hallucinations. The Veteran described his mood as "okay" and his affective presentation was flat. He reported feeling anxious or nervous a few times in the past month and irritable or angry regularly. 

The examiner noted that "the Veteran endorsed an unusual number of affective, psychotic, neurological, low intelligence, amnestic, and total symptoms suggesting he embellished his self-report on these domains - likely in attempt to purposefully mislead [the] examiner." Further, the examiner noted that "symptom combinations endorsed by the Veteran were unusual/atypical in clinical populations but relatively common among people feigning mental disorder." 

The examiner determined that the Veteran exhibited occupational and social impairment with reduced reliability and productivity. With regard to differentiating between mental disorders, the examiner provided the following explanation:
 
[The Veteran's] presentation of PTSD and substance use disorders are mutually aggravating and thus occupational and social impairment cannot be differentiated without resorting to mere speculation. While it appears he functions significantly better when he is NOT actively using illicit drugs, it is possible those periods are also marked by improvement in his PTSD symptoms. To this point, this examiner's current rating of [the Veteran's] Occupational and Social Impairment (above) is impacted by his likely ongoing alcohol and cocaine use. As such, the above rating would reflect a higher level of social and occupational functioning (lower level of impairment) if he was not actively using substances.

The examiner assigned a GAF score of 55 and noted that his "psychological, social and occupational functioning is currently marred by moderate symptoms attributable to both PTSD and substance use disorders." The Veteran reported that his PTSD symptoms make "it difficult to work" but according to the examiner he did "not offer any information to suggest a more impaired level of functioning beyond that described during his previous mental health C&P examination." Further, the examiner noted that his description of "day-to-day functioning was actually above what might be expected" despite also reporting "moderate deficits in some areas of functioning (e.g. hygiene and interpersonal relationships)." The examiner noted that the Veteran's symptoms do result in the impairment of some employment and social functioning.

Analysis

The competent medical evidence differs on the severity of the Veteran's PTSD symptoms during the pendency of the appeal. The private treatment notes by Drs. E.H. and J.L. include opinions of a severity greater than that reflected in the VA MHC notes, SSA evaluation report, and the VA examination reports.

The Board finds that the overall disability picture of the Veteran's PTSD symptoms most closely approximates the criteria for a 50 percent rating. 38 C.F.R. § 4.7, 4.130, Diagnostic Code 9411. The record shows that the Veteran experiences social and occupational impairment from his PTSD symptoms. However, the best medical evidence of record does not indicate that the Veteran has symptoms such as obsessional rituals which interfere with routine activities, speech that is intermittently illogical, impaired impulse control, obscure or irrelevant, near-continuous panic and spatial disorientation. See id. His GAF scores ranging from 50 to 65 reflect his serious symptoms contemplated by the 50 percent rating criteria.

Crucially, the presence of certain symptoms is not necessarily determinative. These symptoms must also cause the occupational and social impairment in the referenced areas. See Vazquez-Claudio, supra. The treatment records, SSA evaluation, and VA examination reports were not indicative of occupational and social impairment that approximate the criteria for a 70 percent or higher rating. Rather, the findings of the VA examiners and treatment records demonstrated that the Veteran had occupational and social impairment with reduced reliability and productivity.

Although Drs. E.H. and J.L. assigned GAF scores of 30 and opined that the Veteran is completely unemployable, their observations did not include findings such as findings of inappropriate hygiene, marked inability to communicate, spatial disorientation, or auditory or visual hallucinations. Rather, their noted symptoms included sleep disturbances, social impairment, severely restricted affect and slowed thought process. The symptoms contained in Drs. E.H. and J.L.'s notes are more consistent with the criteria of a 50 percent rating which includes symptoms manifesting in social and occupational impairment due to: flattened affect, memory impairment, mood disturbances, and difficulty maintaining social and occupational relationships.

Symptoms contemplated by the 70 percent rating criteria pertain to more severe symptoms manifesting into an inability to communicate, severe memory/thought impairment, inappropriate behavior and a neglect of personal hygiene. See id. The best medical evidence of record does not document such symptoms. The Board acknowledges that Dr. E.H. noted in June 2006 that the Veteran's working memory was 100% impaired after examining him in March 2006. However, in a contemporaneous VA medical treatment note from April 2006 the Veteran did not report any memory issues and the examiner, after a thorough mental status examination, did not note any issues with working memory. 

Further, the notes of Dr. E.H. and J.L. do not include symptoms such as spatial disorientation, poor personal hygiene or inappropriate behavior as contemplated by the criteria for a 70 percent rating. The Board acknowledges that the Veteran, in his most recent VA examination, displayed fair to poor personal hygiene. The Board also notes that the Veteran has displayed normal personal hygiene in all other treatment notes. Further, the examiner in the most recent VA examination noted that the Veteran's reported symptoms were "unusual/atypical in clinical populations but relatively common among people feigning mental disorder" and thus demonstrated an "attempt to purposefully mislead [the] examiner." The Board notes that the Veteran's reported symptoms in the most recent VA examination are not credible. The rationale provided by the examiner is persuasive on this point and supported by the record.

Notably, as discussed above, the Veteran's overall psychiatric picture is presented differently when his PTSD is evaluated for purposes of rating the disability. His routine treatment records describe less severe symptoms. Moreover, when his psychiatric disorder was evaluated by the SSA, which included an assessment of several non-service connected disability, his psychiatric disorder was found to only result in moderate functional impairment. Put another way, as remarked by the VA examiner, the Veteran presents a tendency to over endorse psychiatric symptoms when that disability is being examined for the purpose of rating the psychiatric disability (as opposed to receiving treatment or evaluating his total disability picture). Such reduces the probative value of the private psychiatric findings. See Pond v. West, 12 Vet. App. 341 (1999)(although the Board must take into consideration the veteran's statements, it may consider whether self-interest may be a factor in making such statements).

Consideration has also been given to the Veteran's problems involving his live-in girlfriend, which has resulted in police and court intervention. While there is no indication of domestic violence per se, i.e., no charges filed, these interactions due represent some problem with impulse control. Such has therefore been considered in the Veteran's evaluation. However, for the same reasons discussed above, the Board finds that the totality of the evidence does not support the assignment of a rating greater than 50 percent for the Veteran's PTSD.

Looking at the question of social impairment, the Veteran clearly has some problems with interpersonal relationships. There has been uniform acceptance on this finding by all the examiners. However, the fact remains that the Veteran has been a long-term, albeit strained, relationship. He also maintains a relationship with two out of his four children. There is also an indication that the Veteran occasionally attends to church, which denotes that he has a positive relationship with his mother as well as the ability to attend church and interact with others. This does not convey a finding of an inability to establish and maintain effective relationships, which necessary for a 70 percent rating.

Consideration has been given to assigning staged ratings for this period. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). The Board acknowledges that two private medical reports from April 2004 and March 2006 report GAF scores of 30, which would indicate an increase in severity. However, two other private medical reports from June 2004 and August 2004 do not demonstrate such severe symptomatology. Further, VA treatment notes from September 2004, June 2005, April 2006 and November 2007 do not demonstrate such severe symptomatology. As the Veteran was recently noted to be an unreliable historian with regard to his PTSD symptoms, the Board finds that his reports of symptoms are not credible and accordingly a staged rating based solely on the private treatment records, which as discussed above, actually report symptoms that are commensurate with a 50 percent disability rating.

The Board acknowledges that the Veteran is competent to report symptoms of his PTSD. See Barr v. Nicholson, 21 Vet. App. 303 (2007); Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); Layno v. Brown, 6 Vet. App. 465 (1994). The Board notes that the April 2012 VA examiner indicated that the Veteran is an unreliable historian and may have reported symptoms with the intent of misleading the VA examiner. Therefore, the Board finds that he is not credible in his reports of symptoms and their effect on his activities. 

Further, he is not competent to identify a specific level of disability of his disability according to the appropriate diagnostic code. Such competent evidence concerning the nature and extent of the Veteran's service-connected PTSD has been provided by VA medical professionals who have examined him. The medical findings directly address the criteria under which this disability is evaluated. The Board finds these records to be the most probative evidence of record, and therefore is accorded greater weight than the Veteran's subjective complaints of increased symptomatology. See Cartwright v. Derwinski, 2 Vet. App. 24, 25 (1991). 

The Board has also considered whether this case should be referred to the Director of the VA Compensation and Pension Service for extra-schedular consideration. 38 C.F.R. § 3.321(b)(1) (2013). The threshold factor for extra-schedular consideration is a finding that the evidence presents such an exceptional disability picture that the available schedular ratings for the service-connected disability at issue are inadequate. Therefore, initially, there must be a comparison between the level of severity and the symptomatology of the claimant's disability with the established criteria provided in the rating schedule for the disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the disability picture is contemplated by the rating schedule, the assigned rating is therefore adequate, and no referral for extra-schedular consideration is required. Thun v. Peake, 22 Vet. App. 111 (2008).

In the case at hand, the record reflects that the manifestations of the disability are contemplated by the schedular criteria. The Veteran reported symptoms such as depression, anxiety, sleep impairment and irritability, all of which are contemplated by the general rating formula for mental disorders. In sum, there is no indication that the average industrial impairment from the disability would be in excess of that contemplated by the assigned rating. In addition, the evidence does not show frequent hospitalization or marked interference with employment beyond that envisioned beyond the currently assigned rating. Therefore, the Board has determined that referral of this case for extra-schedular consideration is not in order. 38 C.F.R. § 3.321(b)(1).

While there are instances where the Veteran's symptoms are noted to be more severe, the Board finds that, overall, the best medical evidence indicates that the Veteran's symptoms more closely approximate a 50 percent evaluation. An initial rating in excess of 50 percent for service-connected PTSD is denied. 38 C.F.R. § 4.7, 4.130, Diagnostic Code 9411.

TDIU

VA will grant a TDIU when the evidence shows that a Veteran is precluded, by reason of service-connected disability, from obtaining and maintaining any form of gainful employment consistent with his or her education and occupational experience. See 38 C.F.R. §§ 3.340, 3.341, 4.16 (2013). Under the applicable regulations, benefits based on individual unemployability are granted only when it is established that the service-connected disability or disabilities are so severe, standing alone, as to prevent the retaining of gainful employment. Under 38 C.F.R. § 4.16, if there is only one such disability, it must be rated at least 60 percent disabling to qualify for benefits based on individual unemployability. If there are two or more such disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. See 38 C.F.R. § 4.16(a). Disabilities resulting from a common etiology or affecting a single body system are considered one disability for the purpose of reaching the 60 percent single disability or 40 percent disability in combination with others. See 38 C.F.R. § 4.16(a)(2)-(3). 

Where these percentage requirements are not met, entitlement to benefits on an extraschedular basis may be considered when a Veteran is unable to secure and follow a substantially gainful occupation by reason of service-connected disability, and consideration is given to the Veteran's background including his or her employment and educational history. See 38 C.F.R. § 4.16(b). The Board does not have the authority to assign an extraschedular total disability rating for compensation purposes based on individual unemployability in the first instance. See Bowling v. Principi, 15 Vet. App. 1 (2001). In determining whether unemployability exists, consideration may be given to the Veteran's level of education, special training, and previous work experience, but it may not be given to his or her age or to any impairment caused by nonservice-connected disabilities. See 38 C.F.R. §§ 3.341, 4.16, 4.19. 

The Board emphasizes that entitlement to an extraschedular rating under 38 C.F.R. § 3.321(b)(1) and a TDIU rating under 38 C.F.R. § 4.16(b), although having some similar criteria such as questions of the degree of interference of impairment, are based on different and non-overlapping criteria. See Kellar v. Brown, 6 Vet. App. 157, 162 (1994). An extraschedular rating under 38 C.F.R. § 3.321(b)(1), as discussed above, is based on the fact that the schedular rating criteria for a particular disability are inadequate to compensate for the average impairment of earning capacity due to that disability. In contrast, 38 C.F.R. § 4.16(b) requires a determination that a particular veteran be rendered unable to secure or follow a substantially gainful employment, and such determination as to unemployability is based on all the service-connected disabilities rather than a single disability. See VAOPGCPREC 6-96.

The Veteran claims that he is unemployable as a result of his service-connected disability. Therefore, he believes that a TDIU is warranted. 

The Veteran is service connected for PTSD evaluated as 50 percent disabling. As he is only service-connected for PTSD, and it is not rated at 60 percent disabling or higher, he does not meet the percentage rating standards for a schedular TDIU. See 38 C.F.R. § 4.16(a).

Nonetheless, the Board must consider whether the evidence warrants referral to the appropriate VA officials for entitlement to a TDIU on an extra-schedular basis under the provisions of 38 C.F.R. § 4.16(b). See also Bowling, 15 Vet. App. at 6. For a Veteran to prevail on a claim of entitlement to a TDIU, the record must reflect some factor which takes the case outside the norm. The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough; the ultimate question is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether he can find employment. See Van Hoose v. Brown, 4 Vet. App. 361 (1993).

The Veteran reported in March 2008 that he had last worked full time in May 2002. He also reported that he became too disabled to work in March 2004. He noted that his occupation was a welder and he had completed four years of college. He also noted that he left his last job because of his disability. 

A review of the VA treatment notes shows that in April 2006 the Veteran reported that he occasionally does "side work" for his landlord and receives some money "under the table" for odd jobs. In November 2007 he reported that he worked as a day laborer in construction and in January 2008 he reported doing odd jobs in construction. In June 2008 he reported that he had started working full-time and in July 2008 he confirmed that he was working full-time as a welder for a temporary agency and he was optimistic about obtaining a more permanent position. In February 2009 he reported that he still worked in a "temp job" as a welder. In April 2013 the Veteran reported that he was unemployed and receiving disability benefits.

A review of the SSA documents shows that the Veteran was considered not disabled through June 30, 2007. A review of the records show that he has multiple physical disabilities in addition to his PTSD, to include arthritis, hepatitis C, and hypertension. Indeed, the Veteran's award of SSA disability was due to osteoarthritis (primary) and a psychiatric (secondary). He clearly has non-service connected physical limitations that effect his ability to work. His December 2008 functional capacity assessment showed that he may have some interpersonal limitations and increased stress and/or change may cause exacerbation. The examiner noted that the Veteran could likely function "in a low stressful work environment with limited interpersonal contacts." 

Similarly, in the VA examination, the examiner noted that the Veteran's psychiatric symptoms result in impairment of some employment and social functioning. The examiner noted that if the Veteran were to work he would "likely do best working independently." The examiner also noted that his "ongoing substance use may be a larger factor" with regard to his ability to work "if he is not abstinent at this time."

As discussed above, the reports of the private treatment providers indicate that the Veteran was not capable of working. However, since the time of that opinion, the Veteran has reported working full-time as a welder. Further, as discussed in detail above, those opinions were based on symptoms that do not indicate a rating in excess of 50 percent is warranted, and the opinions were based on the Veteran's reports of his symptoms, which the Board has found are not credible. 

The Board finds that the evidence of record indicates that the Veteran would not be prevented from maintaining any substantially gainful employment due to his service connected psychiatric disability.

While the Board does not doubt that the Veteran's service-connected disabilities have some effect on his employability, as evidenced by his 50 percent rating, the weight of the evidence does not support his contention that his service-connected disabilities are of such severity so as to preclude his participation in any form of substantially gainful employment. The Board believes that the symptomatology associated with the service-connected disabilities is appropriately compensated by the currently assigned 50 percent rating. Loss of industrial capacity is the principal factor in assigning schedular disability ratings. See 38 C.F.R. §§ 3.321(a), 4.1 (2013). Indeed, 38 C.F.R. § 4.1 specifically states: "[g]enerally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illness proportionate to the severity of the several grades of disability." See also Moyer v. Derwinski, 2 Vet. App. 289, 293 (1992); Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993) (noting that the disability rating itself is recognition that industrial capabilities are impaired). While the Veteran is competent to discuss the symptoms of his service-connected disability and his perception of its effect on his unemployment, his assertions are outweighed by the conclusions of the relevant VA examiners. The examiners based their conclusions on a review of medical records, the Veteran's reported history, and a contemporaneous physical examination. 

The Board reiterates that the Veteran did not meet the percentage requirements for a TDIU on a schedular basis. Moreover, as there is no evidence to support a finding that his disabilities are outside the norm, the Board finds that referral for extra-schedular consideration is not warranted. Van Hoose, 4 Vet. App. 361. In view of the Veteran's education and work history, which in the Board's estimation is sufficient for meeting the requirements of many jobs, the Board reiterates that referral for extra-schedular consideration is not warranted in this case. Accordingly, a basis for a grant of a TDIU on a schedular or extra-schedular basis has not been presented at any point during the appeals period. Thus, the Board finds that the evidence does not demonstrate that the Veteran is unemployable due to her service-connected disabilities. As such, the preponderance of the evidence is against the Veteran, and the claim for a TDIU must be denied. See 38 C.F.R. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 
 

ORDER

A disability rating in excess of 50 percent for PTSD is denied.

Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities is denied.



____________________________________________
MICHAEL A. HERMAN
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs