Citation Nr: 1761234 
Decision Date: 12/29/17 Archive Date: 01/02/18

DOCKET NO. 08-29 726 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma


THE ISSUES

1. Entitlement to a rating in excess of 30 percent, prior to October 17, 2013 and a rating greater than 50 percent from October 17, 2013 for service-connected post-traumatic stress disorder (PTSD).

2. Entitlement to a total disability rating based on individual unemployability (TDIU).


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESSES AT HEARING ON APPEAL

Veteran and Veteran's spouse at time of Hearing


ATTORNEY FOR THE BOARD

J. Nelson, Associate Counsel


INTRODUCTION

The Veteran served on active duty from September 1967 to August 1983. 

This appeal arises before the Board of Veterans' Appeals (Board) from a rating decision rendered in January 2008 by the Department of Veterans Affairs (VA) Regional Office (RO) in Muskogee, Oklahoma, which granted an initial evaluation of 30 percent for the Veteran's PTSD effective August 31, 2010. 

The Veteran testified before the undersigned Veterans Law Judge in May 2010. A transcript of the hearing is associated with the claims file.

In an August 2010 decision, the Board remanded this matter for additional development.

In an August 2013 decision, the Board denied the Veteran's claim for entitlement to an initial evaluation greater than 30 percent for PTSD, denied the Veteran's claims for entitlement to service connection for hypertension, including as secondary to PTSD; and remanded the Veteran's claim for entitlement to a total disability rating based on individual unemployability (TDIU).

The Veteran then appealed the Board's decision to deny entitlement to an initial evaluation greater than 30 percent for PTSD to the United States Court of Appeals for Veterans Claims (Court). In a February 2014 Order, the Court vacated the portion of the August 2013 Board decision denying an initial evaluation in excess of 30 percent for PTSD and remanded the matter to the Board for development consistent with the parties' Joint Motion for Partial Remand (JMR).

In a September 2014 decision, the Board again denied the Veteran's claim to entitlement to an initial evaluation greater than 30 percent for PTSD and remanded the Veteran's claim for entitlement to a TDIU.

The Veteran then appealed the Board's decision to deny entitlement to an initial evaluation greater than 30 percent for PTSD to the Court. In a June 2015 Order, the Court vacated the portion of the September 2014 Board decision denying an initial evaluation in excess of 30 percent for PTSD and remanded the matter to the Board for development consistent with the parties' JMR. Specifically, the Court found that the VA had not fulfilled its duty to assist the Veteran, because the RO identified medical records from the Oklahoma City VAMC dated August 31, 2006 to October 3, 2007, but those records were not associated with the Veteran's claims file. 

In a July 2015 decision, the Board remanded the Veteran's claims to obtain the Oklahoma City VAMC medical records. The record reflects that the RO requested the appropriate records from the Oklahoma City VAMC. However, records were only available dating back to October 2, 2007. In addition, records dated October 2, 2007 from the Oklahoma VAMC, which were received on October 3, 2007, contain a hand written note which states "attempted 1yr from DOC AO exam only available document". The Board is satisfied that there was substantial compliance with the July 2015 remand directives. Stegall v. West, 11 Vet. App. 268 (1998). 

By a November 2015 Supplemental Statement of the Case, the RO denied the Veteran's claim for entitlement to an initial evaluation greater than 30 percent for PTSD and entitlement to a TDIU. 

Once again, in April 2017 the Board remanded the Veteran's claims for additional development and to afford the Veteran VA examinations. In an October 2017 rating decision the RO denied the Veteran's claim for an initial disability rating for PTSD in excess of 30 percent, but granted an increased rating of 50 percent effective October 17, 2013. The RO also denied the Veteran's claim for a TDIU.

This appeal was processed using the Virtual VA paperless claims processing system and VBMS. Accordingly, any future consideration of this case should take into consideration the existence of these records.


FINDINGS OF FACT

1. Prior to October 17, 2013, the Veteran's PTSD symptoms have indicated no more than occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, with satisfactory functioning generally and with routine behavior, self-care and normal conversation; occupational and social impairment with reduced reliability and productivity is not shown.

2. Beginning on and after October 17, 2013 the Veteran's service-connected PTSD symptoms most nearly approximated a disability picture manifest by psychiatric symptoms causing occupational and social impairment with reduced reliability and productivity; occupational and social impairment with deficiencies in most areas is not shown.

3. The evidence of record does not indicate the Veteran's service-connected disabilities are so severe as to preclude the Veteran from obtaining and maintaining substantially gainful employment.


CONCLUSION OF LAW

1. For the period prior to October 17, 2013, the criteria for a rating of in excess of 30 percent, for PTSD, were not met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2002 and Supp. 2014); 38 C.F.R. §§ 3.159, 3.321(b) (1), 4.1, 4.3, 4.7, 4.130, Diagnostic Code 9411 (2017).

2. Beginning on and after October 17, 2013, the criteria for a rating in excess of 50 percent, for PTSD, were not met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2002 and Supp. 2014); 38 C.F.R. §§ 3.159, 3.321(b) (1), 4.1, 4.3, 4.7, 4.130, Diagnostic Code 9411 (2017).

3. The criteria are not met for a TDIU, including warranting referral for extra-schedular consideration. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 3.340, 3.341, 4.3, 4.7, 4.15, 4.16, 4.18, 4.19 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

 Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), codified in pertinent part at 38 U.S.C.A. §§ 5103, 5103A, and the pertinent implementing regulation, codified at 38 C.F.R. § 3.159, provides that VA will assist a claimant in obtaining evidence necessary to substantiate a claim. They also require VA to notify the claimant and the claimant's representative of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim. As part of the notice, VA is to specifically inform the claimant and the claimant's representative of which portion, if any, of the evidence is to be provided by the claimant and which part, if any, VA will attempt to obtain on behalf of the claimant. 

The VCAA notice requirements apply to all five elements of a service connection claim. These are: (1) veteran status; (2) existence of a disability; (3) a connection between an appellant's service and the disability; (4) degree of disability; and (5) effective date of the disability. Dingess v. Nicholson, 19 Vet. App. 473 (2006). 

The Board finds that all notification and development action needed to arrive at a decision as to the claims have been accomplished through October 2007, February 2008, April 2008, October 2013 and October 2015 notice letters. See Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002) (addressing the duties imposed by 38 U.S.C. § 5103 (a) and 38 C.F.R. § 3.159 (b)). He was also informed about the general criteria for how VA assigns disability ratings and effective dates. 

Regarding the duty to assist, the Board also finds that VA has adequately fulfilled its obligation to assist the Veteran in obtaining the evidence necessary to substantiate his claim. The evidence includes service treatment records, VA treatment records, private treatment records, statements from the Veteran and lay statements in support. He was afforded November 2007, August 2010 and July 2017 VA examinations. The VA medical opinions are based upon review of the claims folder and clinical examination by appropriately qualified healthcare professionals. 

The Court has held that the provisions of 38 C.F.R. § 3.103 (c) (2) impose two distinct duties on VA employees, including Board personnel, in conducting hearings: The duty to explain fully the issues and the duty to suggest the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 488 (2010) (per curiam); See also 77 Fed. Reg. 23128-01 (April 18, 2012).

At the May 2010 hearing, the undersigned identified the issues on appeal. The Veteran provided testimony as to all treatment received for these disabilities and the Veteran testified regarding his ongoing PTSD symptoms and their social and occupational impact, with the help of his representative, wife, and the VLJ. The duties imposed by Bryant were thereby met.

Accordingly, the Board is satisfied that the duty-to-assist requirements under 38 U.S.C.A. § 5103A and 38 C.F.R. § 3.159 (c) have been satisfied.

 Laws and Regulations

Disability ratings are assigned in accordance with the VA's Schedule for Rating Disabilities and are intended to represent the average impairment of earning capacity resulting from disability. See 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.321 (a), 4.1. 

The Veteran's entire history is to be considered when making disability evaluations. See generally 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Where the question for consideration is the propriety of the initial rating assigned, evaluation of the medical evidence since the grant of service connection and consideration of the appropriateness of "staged rating" is required. See Fenderson v. West, 12 Vet. App. 119 (1999). 

The Veteran seeks an increased rating for his service-connected PTSD under 38 C.F.R. § 4.130, Diagnostic Code 9411. When evaluating a mental disorder, the rating agency shall consider the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the veteran's capacity for adjustment during periods of remission. The rating agency shall assign a rating based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination. When evaluating the level of disability from a mental disorder, the rating agency will consider the extent of social impairment, but shall not assign a rating solely on the basis of social impairment. See 38 C.F.R. § 4.126. 

Under the General Rating Formula, a 30 percent disability evaluation is warranted for occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, recent events). 38 C.F.R. § 4.130. 

A 50 percent rating is assigned when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent rating is warranted when there is occupational and social impairment with deficiencies in most areas such as work, school, family relations, judgment, thinking, or mood due to symptoms such as suicidal ideation; obsessional rituals which interfere with routine activities; intermittently illogical, obscure, or irrelevant speech; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and an inability to establish and maintain effective relationships. Id.

A 100 percent evaluation is warranted where there is evidence of total occupational and social impairment due to gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living; disorientation to time or place; memory loss for names of close relatives, own occupation or own name. Id

The psychiatric symptoms listed in the above rating criteria are not exclusive, but are examples of typical symptoms for the listed percentage ratings. Mauerhan v. Principi, 16 Vet. App. 436 (2002).

The Veteran was afforded a VA examination in November 2007 during which a VA examiner confirmed his diagnosis of PTSD using DSM-IV and assigned a GAF score. The Board notes that the newer Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013) (DSM-V) has now been officially released, and VA regulations have been changed to reflect this fact. See 38 C.F.R. § 4.130. However, the Veteran has a diagnosis of PTSD under the DSM-IV criteria because his diagnosis was made prior to the release of the DSM-V. See Cohen v. Brown, 10 Vet. App. 128, 140 (1997) (holding that VA may presume that a diagnosis made by a mental health care professional was made in accordance with the DSM-IV). Thus, the Board shall consider the Veteran's appeal in light of both the DSM-IV and the DSM-V.

In evaluating the Veteran's level of disability, the Board has considered the Global Assessment of Functioning (GAF) scores as one component of the overall disability picture. GAF is a scale used by mental health professional and reflects psychological, social, and occupational functioning on a hypothetical continuum of mental health illness and is relevant in evaluating mental disability. See Carpenter v. Brown, 8 Vet. App. 240, 242 (1995); see also Richard v. Brown, 9 Vet. App. 266, 267 (1996) (citing Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV)). GAF scores between 60 and 51 indicate moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). DSM-IV. 

 PTSD Prior to October 17, 2013

During an October 2007 agent orange registry exam at the Oklahoma City VAMC, the Veteran's post-Vietnam medical problems were listed as bad temper, drinking, awake frequently, mood swings, bad nerves, easily startled, does not like confined spaces, paranoid and anti-social.

The Veteran underwent a VA examination in November 2007 and was diagnosed with PTSD. The examiner found the Veteran's PTSD symptoms most closely approximated the criteria for the 30 percent rating, noting that the Veteran did not have difficulty performing daily activities and described his psychiatric symptoms as causing occupational and social impairment with occasional decrease in work efficiency and intermittent inability to perform occupational tasks. 

The Veteran's post-military employment history included working in a warehouse for one year where the relationship with his supervisor and coworkers was good, United States Post Office for 24 years where his relationship with the supervisor was fair and the relationship with his coworkers was good. There was no history of a post military traumatic event. 

In describing his family and social history the examiner noted the relationship with his father, mother and sibling as good. He denied any psychiatric history in his family. He was currently married. When describing the relationship with his spouse he states the relationship is good. He does have children and when he describes the relationship with his children, he states the relationship is good. Since he developed his mental condition, there have been major changes in his daily activities such as no motivation or interest. There have not been any major social function changes since he developed his mental condition. He stated that he was currently working as a letter carrier for the Post Office and he has worked there since December1983. His relationship with his supervisor is conflict with supervisor and his relationship with his coworkers is good. In 2006 he was off work for 8 weeks because of stress at the workplace. 

The Veteran's stressor was re-experienced as follows: There is a persistent, recurrent recollection of the event. The recollections consist of daydreaming about the events. There is a persistent recurrent distressing dream of the event. The distressing dream consists of dead bodies and body parts. There is a persistent feeling as if the traumatic event were recurring. The feeling of the traumatic event recurring is triggered by loud noises. He avoids stimuli associated with the trauma, as follows: There are persistent efforts to avoid thoughts feelings or conversations associated with the trauma. There are persistent efforts to avoid activities places or people that arouse recollections of the event. There is a persistent inability to recall an important aspect of the trauma. There is a persistent markedly diminished interest or participation in significant activities. This diminished interest or participation in significant activities included avoidance of social activities and having no friends. His wife of 25 years divorced him due to the traumatic event he has the following symptoms of increased arousal, persistent difficulty falling or staying asleep erratic sleep pattern, difficulty falling and staying asleep, persistent irritability or outbursts of anger. The irritability or outbursts of anger has isolated him from people. There is a persistent exaggerated startle response. 

The Veteran reported using alcohol 6-8 times per day, which began in 1965 due to boredom. There were no consequences of his substance abuse. 

The Veteran's orientation was within normal limits. His appearance, hygiene and behavior were appropriate. However, his affect and mood was abnormal with depressed mood which occurs near-continuous and affects the ability to function independently due to no motivation and interest. He was not interested in interacting with people, he had no friends, no hobbies and no motivation at work. His communication, speech and concentration were within normal limits. Panic attacks were absent. There were signs of suspiciousness. There was no delusional history present nor was there delusion observed at the time of the examination. There was no hallucination history nor was there hallucination observed at the time of the examination. Obsessional rituals were absent. 

Thought process was appropriate, judgment was not impaired, abstract thinking was normal, memory was within normal limits, and suicidal and homicidal ideations were absent. The Veteran was assigned a GAF score 60, moderate. 

During his May 2010 Board hearing the Veteran testified that he experiences outburst of anger up to four times per week. He also testified that he had been verbally reprimanded a couple of times at work and received a letter of warning three years prior. The Veteran also described having a physical altercation with a coworker shortly after his separation for the military and outbursts of anger that included fights with his spouse and breaking furniture. Both the Veteran and his spouse described the Veteran's avoidance of social gatherings. When he was asked whether he experienced panic attacks, the Veteran testified that he experienced two to four panic attacks per week. 

In August 2010 the Veteran underwent a second VA examination and confirmed his PTSD diagnosis. In the examiner's opinion, the Veteran's PTSD symptoms most closely approximated the criteria for the 30 percent rating, resulting in occasional decrease in work efficiency and intermittent periods of inability to perform his occupational tasks. He assigned a GAF score of 60, moderate. 

The Veteran's symptoms included recurrent and distressing recollections of the event at a rate of three to four times per week, recurrent dreams about the event twice per year, infrequent flashbacks, intense stress at exposure to internal and external cures, avoidances of thoughts, feelings or associations associated with the trauma and diminished interest in significant activities such as hunting. 

The Veteran described feeling detached and estranged from others and chose his job with the US Postal Service, where he had worked for 27 years, because he preferred to work alone and wanted to avoid coworkers and supervisors. He reported a restricted range of affect with his wife. His symptoms of arousal include difficulty sleeping, falling and staying asleep. He also noted lots of irritability and anger and approximated one episode at work and one episode at home per week. He described a volatile relationship with his wife which had become increasingly volatile and affected his anger, agitation and outbursts. The Veteran also noted an exaggerated startle response, depression mainly manifesting in isolation and loss of interest in activities, less appetite and being self-critical. However, the examiner did not note whether or not the Veteran experienced panic attacks. 

The examiner described the Veteran as cooperative and polite. His grooming and hygiene was fair to good. During the examination he was oriented to person and place, time and circumstance. His level of consciousness was within normal limits. His mood was depressed with congruent affect. His thought process was logical and sequential with no apparent delusions or impairments of thought content. He demonstrated no impairment to his immediate, recent, or remote memory and he reported no extensive difficulties with cognitive functioning. His speech was within normal limits. He denied suicidal ideations. 

The evidence prior to October 17, 2013, does not show that the Veteran's had occupational and social impairment with reduced reliability and productivity necessary for a 50 percent disability rating during this period. In this regard, the November 2007 examination showed that he had a good marriage and had held his current job 24 years. Notably, the Veteran denied suicidal or homicidal thoughts or ideations. The November 2007 examiner described his relationship with his supervisors and coworkers as good. During his May 2010 Board hearing the Veteran testified that he had been verbally reprimanded at work and received a written warning once during his 27 year career. Although the Veteran had to take a leave of absence from work due to stress, the Veteran was able to perform his duties because he could work alone. In addition, the Veteran described outbursts of anger with his wife. He also testified that he maintained a good relationship with his spouse's children. 

It should be noted that that while the Veteran is competent to describe experiencing symptoms of a panic attack. However, while he testified during his Board hearing that he experienced panic attacks two to four times per week, which would be consistent with symptomology found in the 50 percent rating, the Board finds it significant that neither the November 2007 nor the August 2010 examiner described panic attaks. In fact, the November 2007 examiner found that panic attacks were absent. 

The August 2010 examiner noted that the Veteran's mood was depressed with congruent affect, his thought process was logical and sequential with no apparent delusions or impairments of thought content, he demonstrated no impairment to his immediate, recent, or remote memory and he reported no extensive difficulties with cognitive functioning, his overall GAF suggests that his symptoms were of moderate severity. The symptomatology reported by the Veteran and observed by the November 2007 and August 2010 examiners are consistent with the currently assigned 30 percent disability evaluation during this period. Overall, the Board fidns that the evidence prior to October 17, 2013 is consistent with occupational and social impairment with decrease in work efficiency and intermittent periods of inability to perform occupational tasks. However, as the evidence does not show occupational and social impairment with reduced reliability and productivity, a rating in excess of the currently assigned 30 percent for PTSD is not warranted for the period prior to October 17, 2013.

 PTSD after October 17, 2013

In July 2017 the Veteran was afforded a third VA examination. The Veteran's PTSD diagnosis was confirmed. In the examiner's opinion, PTSD symptoms most closely approximated the criteria for the 50 percent rating and were described as having occupational and social impairment with reduced reliability and productivity. At the time of the examination the Veteran had been married twice and divorced for three years. He also described having good relationships with his two children from his first marriage. He lived alone and rarely saw anyone except the man who lives across the street; he had no meaningful social relationships. The Veteran also stated he drank alcohol most days because it helps him sleep.

The Veteran's occupational history included retiring from the US Post Office in 2013 after 30 years. He described having increased problems with his supervisors and being in frequent conflict with them. 

Although the Veteran stated that one point he saw an outpatient therapist for anger management, he was not seeking treatment, took no medication and had never been psychiatrically hospitalized. 

The Veteran's intrusive PTSD symptoms included recurrent, involuntary, and intrusive distressing memories of the traumatic event, recurrent distressing dreams in which the content and/or effect of the dream are related to the traumatic event and dissociative reactions (e.g., flashbacks) in which the individual feels or acts as if the traumatic events was recurring. He also experienced persistent avoidance of stimuli associated with the traumatic event, including avoidance of or efforts to avoid distressing memories, thoughts, or feelings about or closely associated with the traumatic event and avoidance of or efforts to avoid external reminders (people, places, conversations, activities, objects, situations) that arouse distressing memories, thoughts, or feelings about or closely associated with the traumatic event. 

The examiner noted that the Veteran experienced persistent and exaggerated negative beliefs or expectations about oneself, others, or the world, persistent, distorted cognitions about the cause or consequences of the traumatic event that lead the individual to blame himself/herself or others, persistent negative emotional state (e.g., fear, horror, anger, guilt, or shame), markedly diminished interest or participation in significant activities, feelings of detachment or estrangement from others, persistent inability to experience positive emotions (e.g., inability to experience happiness, satisfaction, or loving feelings.). In addition the Veteran showed signs of hyper-vigilance, exaggerated startle response and sleep disturbance. The duration of the disturbance was more than one month and caused clinically significant distress or impairment in social, occupational or other important area of functioning. The disturbance was not attributable to the physiological effects of a substance. 

The symptoms that applied to the Veteran's diagnoses included depressed mood, suspiciousness, chronic sleep impairment, difficulty in establishing and maintaining effective work and social relationships and inability to establish and maintain effective relationships. 

Based upon this review of the record, the Board finds the Veteran's symptoms and limitations are consistent with a 50 percent disability rating for the period beginning on October 17, 2013. Although the Veteran experienced symptoms of depressed mood, chronic sleep impairment, disturbances of motivation and mood, difficulty establishing and maintaining effective work and social relationships, his overall disability picture was more closely approximate to a 50 percent disability evaluation. As such, the Board finds the lay and medical evidence of record is consistent with a disability rating of 50 percent for the period beginning on October 17, 2013. 

In reaching this determination, the Board is aware of evidence within the record which suggests the Veteran's symptoms were more nearly approximate to an increased disability evaluation. For example, the Board notes the Veteran and his spouse is now divorced and does not interact with anyone other than his neighbor since his retirement. However, considered in its totality, the Board finds the evidence, as discussed above, is consistent with a 50 percent disability evaluation beginning on October 17, 2013.

 Entitlement to TDIU

It is the established policy of VA that all Veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated as totally disabled. 38 C.F.R. § 4.16 (2016).

Substantially gainful employment is that employment that is ordinarily followed by the nondisabled to earn their livelihoods with earnings common to the particular occupation in the community where the veteran resides. Moore v. Derwinski, 1 Vet. App. 356 (1991). Marginal employment will not be considered substantially gainful employment. 38 C.F.R. § 4.16 (a) (2016).

A TDIU may be assigned, if the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that if there is only one such disability it is ratable at 60 percent or more, and that if there are two or more such disabilities at least one is ratable at 40 percent or more and the combined rating is 70 percent or more. 38 C.F.R. § 4.16 (a) (2016).

The central inquiry is whether the veteran's service-connected disabilities alone are of sufficient severity to produce unemployability. Hatlestad v. Brown, 5 Vet. App. 524 (1993). Neither nonservice-connected disabilities nor advancing age may be considered in the determination. 38 C.F.R. §§ 3.341, 4.19 (2016); Van Hoose v. Brown, 4 Vet. App. 361 (1993). A claim for a TDIU presupposes that the rating for the service-connected disabilities is less than 100 percent, and only asks for a TDIU because of subjective factors that the objective rating does not consider. Vittesse v. Brown, 7 Vet. App. 31 (1994).

With an approximate balance of positive and negative evidence as to any issue material to the determination of a matter, VA resolves reasonable doubt in the claimant's favor. 38 U.S.C.A. § 5107 (West 2014); 38 C.F.R. § 3.102 (2016); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). To deny a claim on its merits, evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518 (1996).

The Veteran asserts that he is unable to obtain and maintain gainful employment as a result of his service-connected disabilities. In this regard, the Board notes that, at the time he filed a claim for TDIU, service-connection was in effect for the following disabilities: PTSD, rated as 30 percent prior to October 17, 2013, and 50 percent beginning on and after October 17, 2013, compression fracture, cervical spine, rated as 0 percent from August 23, 1983 and 20 percent beginning on and after August 31, 2007, bilateral tinnitus, rated as 10 percent from August 31, 2007 and bilateral hearing loss, rated as 0 percent from August 23, 1983.

For the purposes of 38 C.F.R. § 4.16 (a), two or more disabilities combined must equal at least 70 percent, with one rated at 40 percent or more. Therefore, the combined disability rating is 60 percent. 38 C.F.R. § 4.25. However, the Veteran does not meet the minimum requirements for TDIU under 38 C.F.R. § 4.16 (a) because his combined disability rating is 60 percent. Notwithstanding, this is not dispositive of the issue because consideration of TDIU must also be considered under 38 C.F.R. § 4.16 (b). As such, the Board will only consider the TDIU claim, as due to his service-connected PTSD disabilities.

In this regard, the central inquiry is whether the Veteran's service-connected disabilities preclude him from engaging in substantially gainful employment, work which is more than marginal that permits the individual to earn a living wage consistent with education and occupational experience. Moore v. Derwinski, 1 Vet. App. 356 (1991). 

For a veteran to prevail on a claim for a total compensation rating based on individual unemployability, the record must show some factor which takes the case outside the norm. The sole fact that a claimant is unemployed, is employed only part-time, or has difficulty obtaining employment, is not enough. A rating in itself is recognition that the impairment makes it difficult to obtain or keep employment, but the ultimate question is whether the veteran is capable of performing the physical and mental acts required by employment, not whether he can find employment. Van Hoose v. Brown, 4 Vet. App. 361 (1993).

In his October 2013 Application for TDIU, the Veteran reported that the last time he worked full-time was in March 2013 for the US Postal Service as a letter carrier since December 1983. He did not list any other employment, however, the records reflects that he worked in a warehouse for one year. In his application, he also indicated that he did not leave his last job as a result of his disability, and that he did not attempt to obtain employment since he became too disabled to work. His TDIU application further reflects that the highest level of education he completed was high school, and since becoming too disabled to work, he has not had any other form of education or training.

The Veteran was afforded a VA examination in July 2017 to assess his occupational and social impairment caused by his PTSD. His functional status was described as having intrusive thoughts which interfere with the ability to stay focused on the task at hand, significant difficulty functioning around other people, difficulty functioning as a team member, feeling uncomfortable around others and cannot tolerate being around other people in any setting for more than a few minutes.

The examiner opined that the Veteran had been retired for some time, but many of his interpersonal problems that were problematic when last he worked are still present. He talked to only his neighbor across the street, but otherwise has no contact with people, only his animals. Were he to return to work, these problems would continue. No specific opinion as to the Veteran's employability was provided.

While the examiner described the Veteran as having difficulty focusing, functioning around people, functioning as a team member and feels uncomfortable around others, the Veteran also worked as a letter carrier for 30 years before retiring. During those 30 years he described only be verbally reprimanded a couple of times, given one written letter of warning and retiring for reasons not due to his service connected disabilities. 

In this regard, the symptomatology associated with the service-connected disabilities is appropriately compensated via the combined 60 percent rating. Furthermore, loss of industrial capacity is the principal factor in assigning schedular disability ratings. See 38 C.F.R. §§ 3.321 (a), 4.1. Additionally, 38 C.F.R. § 4.1 specifically states that "[g]enerally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability." See also Moyer v. Derwinski, 2 Vet. App. 289, 293 (1992) and Van Hoose, 4 Vet. App. at 363 (noting that the disability rating itself is recognition that industrial capabilities are impaired). 

The Board finds that the facts are not sufficient to warrant referral to the Director of Compensation Service for consideration of TDIU on an extraschedular basis. The evidence of record has not shown, nor has the Veteran asserted, any exceptional circumstances or unique factors which take this case outside the norm. 

Therefore, based on the foregoing, the preponderance of the evidence is against this TDIU request. As such, the "benefit of the doubt" rule is not applicable, and the claim is denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 4.3.


ORDER

Entitlement to an increased initial rating, in excess of 30 percent, for the Veteran's service-connected PTSD with dysthymic disorder is denied.

Entitlement to an increased rating beginning on and after October 17, 2013, in excess of 50 percent, for the Veteran's service-connected PTSD is denied.

Entitlement to a TDIU is denied.



____________________________________________
DAVID L. WIGHT
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs